## WESTERN INDEMNITY CO. v. TOENNIS et al. (No. 937.)*

(Court of Civil Appeals of Texas. Beaumont. April 6, 1923. Rehearing Denied April 18, 1923.)

**1. Master and servant ⟨Key⟩401—Pleading held to show timely filing of compensation claim.**

Where the petition in a suit by the insurer to set aside an award of the Industrial Accident Board for the death of an employé alleged that the Board docketed a claim for compensation and alleged facts showing that the claim was filed with the Board within six months after the accident, as required by Complete St., art. 5246—43, the failure of the answer to allege that the claim was filed within six months did not render it subject to demurrer.

**2. Appeal and error ⟨Key⟩216(1)—Error, if any, in giving special charge should be called to court's attention, and a correct special charge requested.**

An instruction to the jury to answer special issues "Yes" or "No" as they found the facts to be was not fundamentally erroneous because of a failure to charge on the burden of proof, since it could be construed as an invitation to answer the issues on the preponderance of evidence, and, if error, should have been called to the attention of the trial court when counsel inspected the issues, and a special charge should have been presented, and on failure to do so no error can be based on failure to charge on the burden of proof.

**3. Trial ⟨Key⟩272 — Failure to call trial court's attention to exception to charge at earliest moment possible held waiver of right to present exception.**

Where plaintiff's attorney waived his right to examine the court's charge under an agreement with the trial judge to reduce his exceptions to writing and file them at the conclusion of the trial, which was limited by the trial judge to certain exceptions called to his attention before the charge was prepared for sub-

mission to the jury, and plaintiff's attorney was furnished a copy of special issues before the trial was ended, his failure to call to the court's attention at the earliest moment, when it could have been corrected, a failure to charge on the weight of evidence waived the right to present an exception based thereon.

**4. Trial ⟨Key⟩272—Waiver by counsel of right to inspect charge waives all errors in charge not called to attention of trial court.**

Under Complete Statutes, arts. 1970 and 1971, providing that the trial court shall submit his charge to counsel for their inspection before reading it to the jury, which are remedial in nature, neither counsel nor the trial court can waive their provisions, and, when counsel waive their right to inspect the court's charge, all errors in the charge not called to the court's attention are waived, including a failure to charge on the burden of proof in submitting special issues.

**5. Insurance ⟨Key⟩138(1)—Inclusion of "painting" in liability insurance policy covering "paper hanging" valid though classified as different hazards by commission.**

Where workmen's compensation policy covered paper hanging and all operations necessarily incident or appurtenant thereto or connected therewith, the inclusion, by construction, of painting as a necessary part of paper hanging did not make the policy illegal as contrary to the classification of painting and paper hanging as distinct and different hazards by the Commissioner of Insurance and Banking.

**6. Trial ⟨Key⟩350(3)—Submission of special issue whether painting was "related" to paper hanging and within liability policy held not error.**

In a suit by an employers' liability insurer against relatives of a deceased employé to set aside an award of compensation by an Industrial Accident Board, on the theory that the employé was injured while painting, and the policy applied only to paper hanging, where it appeared from the evidence as a matter of law that painting was incident, appurtenant, or connected with paper hanging, in view of the fact that the word "related" was not synonymous with other conditions of the policy, but was used by witnesses in speaking of the building trades, and that plaintiff knew the employer's business included painting and issued the policy intending it to cover risks in painting, submitting in a special issue whether painting was "related" to paper hanging was not error, regardless of the absence of the word "related" in the policy, or in defendant's pleadings.

**7. Insurance ⟨Key⟩435—Liability insurer issuing policy to cover risks of employer, a painter and paperer, cannot defend on ground that only papering risks are included.**

An employer's liability insurer could not issue a policy to cover the occupation of paper hanging with the understanding that the policy included painting as a necessary part of the employer's business as decorator, and on a request from him for a policy protecting him in his business, and then defend an action for

⟨Key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused June 6, 1923.

death of a workman while painting, on the ground that painting was not necessary, incident, nor appurtenant to, nor connected with, paper hanging.

**8. Appeal and error ⬧➾742(4)—Proposition of error based on issue not submitted held without merit.**

On appeal in a suit by an employer's liability insurer against relatives of a deceased workman to set aside an award by the Industrial Accident Board, a proposition of error based on the admission of evidence of mistake in the issuance of the policy, supported by no statement showing how the testimony was injurious, was without merit, especially where such issue was not submitted.

Hightower, C. J., dissenting in part.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by the Western Indemnity Company, insurer, against Mrs. Martha Toennis and others to set aside an award of compensation by the Industrial Accident Board for the death of Emil Toennis, employé. From a judgment sustaining the award, plaintiff appeals. Affirmed.

E. C. Gaines, of Austin, for appellant.
A. B. Wilson, of Houston, for appellees.

WALKER, J. This is an appeal from a judgment of one of the district courts of Harris county, sustaining an award of the Industrial Accident Board against appellant in favor of appellees. The trial was to a jury on special issues. On the 10th day of September, 1920, the Houston agents of appellant issued a policy of employers' liability insurance to K. W. Hille to run from September 26, 1920, until September 26, 1921. The declarations on which the policy was issued stated that it was to cover the business of "paper hanging." The declarations also contained the following stipulation:

"This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with, or in relation to, such work places."

And:

"Item 5. This employer is conducting no other business operations at this or any other location not herein disclosed, except as herein stated: 'no exceptions.' "

Hille's occupation and business was described in the declarations and in the policy as that of a "paper hanger." The policy contained the following provisions:

"This agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places. This agreement shall apply only to such injuries so sustained by reason of accident occurring during the policy period limited and defined as such in Item 2 of said Declaration.

"A. The premium is based upon the entire remuneration earned, during the Policy Period, by all employés of this employer, engaged in the business operations described in said Declarations together with all operations necessary, incident, or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto; excepting however the remuneration of the President, any Vice-President, Secretary or Treasurer of this employer, if a corporation, but including the remuneration of any one or more designated officers who are actually performing such duties, as are ordinarily undertaken by a superintendent foreman or workman. If any operations as above defined are undertaken by this employer but are not described or rated in said Declarations, this employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with 'Condition C' hereof, at the rates, and in compliance with the rules, of the Manuel of Rates in use by the company upon the date of issue of this policy."

This policy was issued in renewal of a prior policy issued and delivered to Hille by the same agents of appellant, running from the 29th of September, 1919, to the 29th of September, 1920. In connection with both policies, Hille gave his annual payroll as $3,000, which was stated by him to be on his business as a "paper hanger." The following is Hille's testimony as to what he said to appellant's agents when he applied for this insurance:

"I had one policy previous to that from them; I had two policies. I first applied to the Greenfield Insurance Agency for the insurance. That was located in the First National Bank Building. I got the second policy from the same party; it was just renewed. The second policy was mailed to me by the same party that mailed me the first policy; I think it was Greenfield's Insurance Agency. I paid the premium to Greenfield's Insurance Agency on both policies. I did not have any conversation with the Greenfield Insurance Agency when they issued the second policy; I did not have any conversation with them with reference to my business after they issued it. At the beginning of the negotiations for the policy I asked him whether his company carried compensation, and he said, 'Yes,' so I told him I wanted to take out compensation insurance. He asked me what my business was, and I told him painting, decorating, and paper hanging. He asked what my pay roll amounted to the previous year, and I told him about $3,000; that is all there was

said, and he issued me the policy. He sent it to my house, and I sent him the money.

"I notified my employees that I had become a subscriber; I received some cards stating that I had complied with the Compensation Laws; the Greenfield Insurance Agency sent me those cards; the name of the Western Indemnity Company was on the cards. I placed the cards so the men could see them, placed them in the tool box, which was always open, where it could not be destroyed, and was visible to any one working for me. Mr. Toennis could have seen the cards."

"At the time I had this conversation with Mr. Greenfield about the character of policy I wanted, he said he would issue the policy. I asked that it cover painting, decorating, and paper hanging. I thought he had issued such a policy. I was ready to pay any additional premium in the event I was liable for any under the terms of this policy."

As to the relation and connection of paper hanging with painting, Hille testified:

"General painting and decorating and paper hanging is all one business, and it is one trade and one line of business. My men interchange, some paint some days and hang paper some days and do interior decorating; they are interchanged."

"A paper hanger usually works inside of a building. I do not know of any buildings that are papered on the outside, up as high as three, four or five stories. On the inside of a building when they paper they put on a kind of paste and then spread the paper down on it. I don't say that is the same kind of work exactly as painting a building with a brush on a scaffold on the outside, but I say it belongs to one trade. A paper hanger is not necessarily a painter, but as a rule they are. A man can be a paper hanger and never have used a paint brush. For a man to be a practical painter requires some experience. Take you, for instance, if you had never painted or used a brush, I wouldn't think you would be a good practical painter when you first took the brush. A man may be a good paper hanger and never do anything but paper hanging, and not know anything about painting; that is true; the paper hanger is not necessarily a painter. It is convenient for a man to know both trades; it is better for him to know both trades, because people who want painting done very frequently want paper hanging done, and for that reason a man who learns how to hang paper also learns how to paint, so he can do more work at the same place. I don't mean by that he cannot paper hang unless he can paint, or cannot paint unless he can paper hang; they are different kinds of work. For instance, a carpenter may know how to build a house, and paint the house and paper the house, but they would be different kinds of work, although one man could do them. Painting is incident to paper hanging in the sense it is convenient to know it in connection with it, but it is not incident to it in the sense that to be a paper hanger you have to be a painter; in other words, you can be just as good a paper hanger and just as perfect and complete a paper hanger without knowing how to paint as by knowing how to paint."

Alfred Pereira, witness for appellees, testified:

"I am a painter and paper hanger. I have been in that business about twelve years or something like that."

"Q. What other business or what other line of work does a paper hanger engage in? A. Why, that is all in one trade, yes, sir; you know, you pick up all together, this paper hanging, painting, and decorating, to learn the trade right, and when you go into the shop to learn the trade it takes three years to learn the trade. I learned all three of them; that is all in the business together.

"I suppose there are people who just learn paper hanging and exclude painting and decorating, but I do not know any of them; I never saw any of them. I could not say whether there are any here who confine their activities solely to paper hanging, but you take in different parts of the state, why they have such as that that don't do anything but hang paper, but I don't know any of them. In my experience all the paper hangers are painters, and when you learn the trade, which takes three years, you learn it all."

"When I say that painters and paper hangers belong to the same trade I mean that a person who is a paper hanger is frequently a painter, or a painter is frequently a paper hanger; that is the way it generally goes in that line of business, but I would not say it is always the case. It is frequently the case that a painter is only a painter, and on the other hand it is frequently the case a paper hanger is only a paper hanger.

"Paper hanging and painting is the same trade. I learned it all in one trade, and there is one association usually of painters and paper hangers; it is not an association of paper hangers, an association of painters and an association of interior decorators; it is all one."

I. N. Stewart, witness for appellant, testified as follows:

"The trade of painting and paper hanging is often considered one trade. When a man serves an apprenticeship so as to become qualified for paperhanging or painting, he does not always qualify himself to do painting and paper hanging and interior decorating. I did not qualify myself as a paper hanger; I did qualify myself as a painter, and to do that I worked two seasons. As to what is a season, I will say that during the winter in that climate we don't do very much painting, and it was in the summer; I just worked at painting two seasons.

"I did not belong to the association or union at that time, but I had had sufficient experience to do so, I had about two years' experience, that is, two seasons' experience; that is the only experience I ever had. I did not do any paper hanging, I just did some painting, both outside and inside; then I did not follow it any longer. As to whether I know that the trade of painters and paper hangers is one trade, will say that a good many painters do paper hanging; I don't know that it is classed as one trade. I would not say that there is a trade known as paper hangers, and another trade known as painters, and that they are

separate and distinct. I know that a painter may do both inside and outside work, for I did that myself, but I did not hang any paper; there are those who do both painting inside and outside the house and hang the paper, but I wouldn't say most of them do that; there is many a painter that would not hang paper."

John B. January, another witness for appellant, testified as follows:

"My name is John B. January. I am a contracting builder at the present time; I follow that business in Houston; I have been here fifty years, or in the vicinity of it; I have been following that line of business about thirty years continuously. As to whether or not during that time I have had an opportunity to observe a wide range of men engaged in painting and in paper hanging, will say I have for twenty years been a manager or superintendent. From my occupation as contractor in those lines I understand the nature and differences that exist in those two occupations. Paper hanging and painting is not the same thing. Paper hanging is incident to or necessary to it in some instances. In a small town the painter has got to hang paper, but in a place like Houston he does not. Painting is not necessary to paper hanging in a place like Houston; I never found it in any reasonable sense incident to it."

"I say paper hanging and painting are different trades. That is what I tell this jury. I never said they were not associated. Paper hanging and painting is an allied trade, operated and conducted by the same person. I am a contractor and I ask for it all. Do you want my card? I ask for six and I say I am a painter; I ask for everything that is connected with the painting; that comes under that. I do not employ men who are painters and paper hangers. I am a painter and a paper hanger. A painter would be one person and a paper hanger would be another. It would not pay me to employ a man who paints and let him hang paper; I would not do it, and I would not allow a paper hanger to do any painting. That is two trades. It is recognized as two trades, connected."

"There is no trade like that in Houston, there are so few of them. There is a trade of painters and paper hangers in Houston. There is not a separate trade of painters in Houston known as the painters. There is no separate trade known as the paper hangers; they are called painters and paper hangers; they are different things but they are connected so that they can be controlled in the prices they charge and hours. Sometimes the paper hanger gets the same wages the painter gets. He gets $8 now, and the painter gets $8 now."

"I do not know that the painters and paper hangers and interior decorators is one organization; well now, yes, that is all one organization, all under one head. If painting is incident to or connected with paper hanging, I don't know it; it does not pertain to it at all; paper hanging does not pertain to painting, it is not incident to painting and is not connected with it, but they belong to the same organization.

"Q. I mean the two trades are not associated or allied? A. What do you mean by 'allied'?

"Q. I mean by that, they are associated together. A. Make it 'associated'—make it plain.

"Q. I am not talking about the individuals associating with one another. I am talking about the two lines of business being centered and concentrated under the same organization and followed by the same people—that paints one day and paper hangs the next, and they are interchangeable. A. Part of your question is true, and the other part is not. They are associated, conducted under the same order, but a man who paints to-day doesn't paper hang to-morrow, not all; I don't know what other men do; I only know the shop I have conducted; I don't have a paper hanger to paint, nor a painter to paper hang. That is my own individual opinion about it. I was in there to make money; that is my own individual opinion, that is all I am giving now, is my opinion. Some people do follow both. I heard a gentleman here say he did."

Paper hanging was classified by the Commissioner of Banking and Insurance as No. 5491, Symbol CB, rate $1.49, and painting and decorating away from the shop (both interior and exterior work), including painting steel structures and bridges, as No. 5474, Symbol DD, rate $4.66.

During the year 1921, Emil Toennis was employed by Hille in his regular occupation of paper hanging and painting. Some days Toennis painted, other days he hung paper. On the 5th of August, 1921, while painting a house in the due course of his employment by Hille, he fell from the third story and was killed. After the death of Toennis, Hille made a report showing a pay roll of about $14,000, on which he was due appellant a premium of about $700 provided his policy covered painting. On the 20th of October, 1921, the Board made an award in favor of appellees, the widow and children of Toennis. On the 18th of November, 1921, appellant filed this suit to set aside that award, alleging that the Board had docketed appellees' claim on its docket as No. G–13088, and styled Emil Toennis, deceased, employe, v. K. W. Hille, employer, Western Indemnity Company, insurer, and that the Board made its award under that number and style on the 20th of October, 1921, reciting that Toennis was killed on August 5, 1921, while in the due course of his employment with Hille, and that Hille was a subscriber under the Employers' Liability Act, and carried a policy of insurance with appellant, also making all necessary allegations to have the award reviewed. Appellees answered by cross-action, praying for affirmative relief under the above-described policy, making the same part of their answer, and specially plead the conditions of the policy as copied above. Appellees also plead that Hille made known to appellant at the time he applied for the insurance the nature and character of his business as that of painting, paper hanging, and interior decorating; that paper hanging includes painting and interior decorating, and—

"that painting is necessary, incident, appurtenant and connected with the operation of a person engaged in paper hanging, and it was so understood by plaintiff and said Hille at the time of the issuance and delivery by plaintiff of said policy of insurance and the renewal thereof, and as within the meaning, terms, conditions, stipulations, etc., in said policy as hereinbefore alleged."

Appellees also alleged—

"that plaintiff was advised by said Hille that he was engaged in the business of painting, paper hanging, and interior decorating and desired an insurance policy to cover his employés while painting, papering, or interior decorating; that plaintiff agreed to issue to said Hille an insurance policy in conformity with the said Hille's desires as above alleged,"

and that under the circumstances, as alleged, the policy was issued and delivered to Hille. Appellees prayed that the policy be held to include the business of painting, and, if not, that it be reformed to include that business in accordance with the oral conditions under which it was issued. Appellant made no question against the general agency of its agents who issued the policy, and plead no facts that would limit the effect of information received by them in the due prosecution of its business. On the conclusion of the evidence, appellees abandoned in open court their prayer for reformation of the policy, and the case was submitted to the jury on the following charge:

"Gentlemen of the Jury:

"This case will be submitted to you on what is known as special issues, your answer to which will be your only verdict in the case.

#### "Special Issue No. 1.

"Did Emil Toennis, deceased, receive the injury resulting in his death while in the course of his employment by K. W. Hille? Answer 'Yes' or 'No' as you find the facts to be. (To this issue the jury answered, "Yes.")

#### "Special Issue No. 2.

"Was painting necessary, incident, or appurtenant, or connected with, or related to paper hanging under the terms of the insurance policy sued upon in this cause? Answer 'Yes' or 'No' as you find the facts to be. (To this question the jury answered, "Yes.")

"In the event you have answered the two preceding questions 'Yes,' and only in that event, then you will answer the following question:

#### Special Issue No. 3.

"Is this a case in which manifest hardship and injustice would result to Mrs. Toennis and her four children unless a lump sum settlement should be paid Mrs. Toennis and her four children? Answer 'It will' or 'It will not' as you find the facts to be." (To this question the jury answered, "It will.")

[1] Appellant's first proposition is that the court erred in overruling its general demurrer on the ground that appellees did not allege that their claim was filed with the Industrial Accident Board within the six months' period allowed by law, and that it should have had an instructed verdict, because the proof did not show that the claim was ever filed with the Board, or that it was filed within six months after the death of Toennis.

Appellant advances a sound proposition when it says that the courts do not have original jurisdiction of claims under the Compensation Act, and that they acquire jurisdiction only by way of appeal from an award made by the Board, and that the Board acquires jurisdiction only when a claim is filed with it within six months after the accident, with the exception that under certain circumstances the Board has power to waive a strict compliance with this limitation. See article 5246—43, Texas Complete Statutes. But it does not follow that the trial court erred in retaining jurisdiction of his claim. All jurisdictional allegations were made by appellant, and it was not necessary for appellee to repeat them in their answer. Appellant's petition showed that the claim was filed before the Board, and within the statutory period. No direct allegation is made to that effect, but it did allege that the Board docketed this claim as follows:

"No. G-13088, Emil Toennis, Deceased Employé, v. J. W. Hille, Employer, Western Indemnity Company, Insurer."

The board could only acquire jurisdiction when a claim was filed before it. There is a presumption that the Board conducts its business in a lawful manner. Therefore the necessary intendment of appellant's allegation is that the claim was filed. Again, appellant alleged facts showing that Toennis was killed on the 5th of August, 1921; that the Board made its award on the 20th of October, 1921, and the record shows that this suit to set aside the award was filed on the 18th of November, 1921. It thus clearly appears from appellant's petition that the claim was filed before the Board, and within the statutory period. These allegations were fully sustained by the evidence.

[2-4] Appellant's second proposition is that the court refused to submit his charge to its attorney for inspection before reading it to the jury; that there was no charge on the burden of proof; and that this omission operated to its prejudice.

This proposition has no merit. The bill of exceptions filed by appellant shows that the trial court did not refuse to submit his charge to its attorney, but that the attorney voluntarily waived the privilege of examining the court's charge under an agreement to reduce his exceptions to writing and file them after the conclusion of the trial. But the bill of exceptions further shows that this agreement was limited by the trial court to certain exceptions called to his attention by counsel

before the charge was prepared for submission to the jury. It appears that the court prepared the issues to be submitted to the jury, submitted these issues to counsel for their inspection; that counsel reserved his exceptions to these issues and that the court informed him that nothing would be added to the charge except the caption, and that this, in fact, was all that was added to the charge. The issues, as presented to counsel, were each followed by the following instruction: "Answer 'Yes' or 'No' as you find the facts to be." Counsel for appellant heard, or could have heard, the reading of the charge to the jury. A copy of the charge was placed before counsel before the argument concluded. He did not call the omission to the court's attention until after the conclusion of the trial. On the facts recited, which are taken from the bill of exceptions, the trial court refused to allow his exception. In so doing, he did not commit error, for the following reasons:

(1) The failure of the court to charge on the burden of proof is not fundamental error. It cannot be said that in this case the court gave no charge on that issue. The instruction to answer " 'Yes' or 'No' as you find the facts to be" certainly could be construed by the jury as an instruction to answer the issue on the preponderance of the evidence. If this instruction was error, it should have been called to the court's attention when counsel inspected the issues, and, if not sufficiently explicit to satisfy appellant, a special charge should have been presented, neither of which was done.

(2) The bill of exceptions does not show that the trial court refused to allow counsel the right to inspect the charge, but affirmatively shows that this right was waived.

(3) The bill shows that counsel for appellant was furnished with a copy of the charge before the trial concluded, and, not having called this exception to the court's attention before the charge was read to the jury, under the agreement he had with the court, the duty rested on him to call the court's attention to the omission at a time when it could have been corrected. By failing to do this at the earliest moment, he waived any right to present it, under the agreement he had with the court.

(4) Articles 1970 and 1971, Texas Complete Statutes, providing that the trial court shall submit his charge to counsel for their inspection before reading it to the jury, are highly remedial in their nature, and neither the trial court nor counsel can waive their provisions. When, as in this case, it is made to appear, by a bill of exceptions or otherwise, that counsel have waived their right to inspect the court's charge, it must be held that all errors in the charge not called to the attention of the court are waived.

[5] Appellant's third proposition is as follows:

"Where the policy of insurance does not cover the employment in which the injury occurred, the insurance company is not liable. The policy sued on covered only 'paper hanging' and 'all operations necessary, incident, or appurtenant thereto or connected therewith'. The defendants alleged that the employee was injured while engaged in the occupation of 'painting.' The Commissioner of Insurance and Banking, as required by law, had classified 'painting' as a distinct and different hazard from 'paper hanging,' and any insurance company writing a policy that classified them as one and the same hazard was violating the law under severe penalties. Therefore the courts will not permit a policy in legal form that only purports to cover 'paper hanging' to be construed as covering 'painting', when that construction would add language not in the policy and create a contract by construction that would be in violation of law, and the court should have sustained plaintiff's special exceptions fifth and sixth. Having overruled these when the evidence showed that these employments were, both in fact and as a matter of law, distinct and different hazards and employments, the court should have granted the motion for an instructed verdict in favor of plaintiff."

This proposition is without merit. Appellees alleged that painting was necessary, incident, and appurtenant to and connected with paper hanging; that this was understood by appellant when the policy was issued; that appellant understood the nature of Hille's business, and agreed with him to issue a policy covering his business. As we understand their petition, appellees have alleged a cause of action within the terms of the policy, and have also alleged facts which would constitute an estoppel against appellant to now assert that the policy does not include painting, and have also alleged a waiver by appellant against any such contention. The issues thus raised by the pleadings were also raised by the proof. Under appellees' allegations, the inclusion of "painting" within the terms of the policy does not make it illegal nor in violation of the law. It was stipulated by the terms of the policy that the premium was to be determined at the end of the policy year by the amount of the wages paid by Hille to his employés. If the policy included painting, Hille was clearly liable for the premium on such risk at the rate fixed by law.

[6, 7] The second issue submitted to the jury was as follows:

"Was painting necessary, incident, or appurtenant or connected with or related to paper hanging under the terms of the insurance policy sued upon in this cause?"

Appellant's fourth proposition is based on the use in this issue of the word "related."

The other conditions of this issue were a part of the policy and were pleaded by appellees, but the word "related" was neither a part of the policy nor of appellees' pleading. On the facts of this case, we do not think the use of this word was error, for the following reasons:

First, because it appears to us, as a matter of law, under the testimony of all the witnesses, that painting was incident, or appurtenant, or connected with paper hanging. All the witnesses testified that it was one business; that it was covered by one labor union; that many paper hangers were painters; that some workmen did work on one job one day and maybe the other the next; that those engaged in the contracting business included in their work painting, paper hanging, and interior decorating. If we are correct in this conclusion, then no reversible error was committed by the use of the word "related" in the second issue. But it is our further conclusion that "related" is not a synonymous term with the other conditions of the policy, as used in this issue. As we understand the testimony of the witnesses, they used the word "related" in speaking of the building trades, such as carpentering and masonry, as being related, that is, being necessary in building a house, but that these were separate, distinct and independent trades, with no connection, except that they contributed to the building of the house or other structure. But apart from all we have just said under this proposition, it clearly appears from the evidence that the following issues were raised in appellees' favor: (1) That appellant understood the nature and character of Hille's business at the time the policy was issued, and. agreed to issue a policy protecting him under the Workmen's Compensation Act; (2) that appellant issued the policy with the understanding between it and Hille that the term "paper hanging" included painting and interior decorating, and that the word "paper hanging" was chosen by it as a term with which to describe Hille's occupation. While these issues were not submitted to the jury, having been pleaded and having abundant support in the evidence, they should be resolved in appellees' favor, if necessary to sustain the judgment. Appellant could not issue a policy with the understanding that it included painting, or on a promise to issue a policy to include painting, or with the understanding that the term "paper hanging" included painting, or with the full knowledge of the nature and character of Hille's business, on a request from him for a policy protecting him in his business, and then defend, as it is attempted to do in this suit, on the proposition that painting was not necessary, incident, nor appurtenant to, nor connected with the trade of paper hanging. Wagner & Chabot Westches-

ter Fire Ins. Co., 92 Tex. 549, 50 S. W. 569; Equity Mutual Fire Insurance Co. v. Harrell (Tex. Civ. App.) 247 S. W. 678.

[8] By its fifth proposition appellant complains of the admission of the evidence on the issue of mistake or error in the issuance of the policy.

No statement is made showing how this testimony was injurious to appellant, and, inasmuch as the issue was not submitted, we conclude that this proposition is without merit.

The judgment of the trial court is in all things affirmed.

HIGHTOWER, C. J. I agree with Justice Walker that the judgment of the trial court ought to be affirmed, and agree with him in all conclusions announced in the opinion, except the following:

"Articles 1970 and 1971, Texas Complete Statutes, providing that the trial court shall submit his charge to counsel for their inspection before reading it to the jury, is highly remedial in its nature, and neither the trial court nor counsel can waive its provisions."

I am not prepared at this time to say that the trial court and counsel in a case may not waive the provision of the articles mentioned, if they desire to do so.