**CAFFEY v. ÆTNA CASUALTY & SURETY CO.**

No. 2722.

Court of Civil Appeals of Texas. Eastland.
April 1, 1949.

Rehearing Denied April 22, 1949.

Scarborough, Yates, Scarborough & Black, of Abilene, for appellant.

McMahon, Springer & Smart, of Abilene, for appellee.

LONG, Justice.

This suit was instituted by Bernard Caffey by and through his next friend, Jess Caffey, against Ætna Casualty & Surety Company to set aside a compromise settlement agreement entered into on the 26th day of May, 1947, between plaintiff and defendant for injuries received by plaintiff while employed by the Cisco Steam Laundry. Plaintiff alleged three grounds for setting aside said compromise settlement agreement: (1) Minority of plaintiff, coupled with total disability; (2) fraud committed by the claim agent of defendant; and (3) mistake. At the conclusion of the testimony, the court instructed a verdict for the defendant and entered judgment accordingly.

Plaintiff predicates his appeal upon one point, namely, "the error of the trial court in instructing a verdict for the defendant." The record discloses that plaintiff, on the 14th day of March, 1947, was employed by the Cisco Steam Laundry and on said date sustained an injury to his side. That prior thereto, the Ætna Casualty & Surety Company had issued to the Cisco Steam Laundry a policy of workmen's compensation insurance covering its employees, which said policy was in full force and effect at the time plaintiff received his injury. Thereafter, on the 28th day of May, 1947, the plaintiff and the defendant entered into a compromise settlement agreement wherein plaintiff agreed to accept the sum of $400 in full settlement of his claim. On the 2nd day of June, 1947, such compromise settlement agreement was approved by the Industrial Accident Board and the defendant thereafter paid plaintiff the sum of $400, taking his receipt therefor. Plaintiff continued to work at the Laundry until June 16, 1947, at which time he went to Mineral Wells and took treatment for his injury from a doctor who undertook to treat his condition by injections. The doctor at Mineral Wells testified the plaintiff had a hernia and that the injections were administered for the purpose of curing said hernia. After plaintiff received the second injection he was unable to walk without assistance. He was placed in a hospital in Mineral Wells and there remained until he had received twelve of such injections. One of plaintiff's legs became infected and he was removed to a hospital at Ranger where his right leg was amputated.

Plaintiff contends he was totally and permanently disabled at the time the compromise settlement agreement was entered into and that being a minor, and not joined by a guardian or next friend, the compromise settlement agreement and the award of the Board based thereon, are void or at least voidable. It is undisputed that the plaintiff was a minor at the time the compromise settlement was made. Art. 8306, Sec. 13, Rev.Civ.Stat., provides:

"If an injured employe is mentally incompetent or is a minor or is under any other disqualifying cause at the time when

any right or privileges accrue to him or exist under this law, his guardian or next friend may in his behalf claim and exercise such rights and privileges except as otherwise herein provided. In case of partial incapacity or temporary total incapacity, payment of compensation may be made direct to the minor and his receipt taken therefor, if the authority to so pay and receipt therefor is first obtained from the board."

▆ It is our opinion that under our Workmen's Compensation Statutes minor employees are not placed in the same status as adult employees. If an injured minor employee is totally and permanently incapacitated he must act through his guardian or next friend in making settlement or compromising his claim for such disability. If he has a disability less than total and permanent, payment for such incapacity may be made directly to him when approved by the Board. As said by Chief Justice Hickman while a member of the Commission of Appeals in Latcholia v. Texas Employers Insurance Association, 140 Tex. 231, 167 S.W.2d 164, 167, wherein he was discussing Art. 8306, Sec. 13, Rev.Civ.Stat.:

"This statute unmistakably declares that a minor is under a disqualification. It authorizes his guardian or next friend to act for him 'except as otherwise herein provided.' The only exception provided is that, in case of partial incapacity or temporary total incapacity it is not necessary that the minor be represented before the board by a guardian or next friend, but the board itself may perform the function of protecting the interest of the minor. It follows that a payment of compensation to the minor for such incapacity, if authorized by the board and a receipt by the minor taken therefor, will acquit the insurer. The only logical inference which could be drawn from this statute is that the Legislature intended thereby to limit those cases in which payment of compensation might be made directly to a minor to instances in which the incapacity is partial or temporary, and to deny authority to make payments directly to the minor when the incapacity is total and permanent. Payments for such incapacity must be made to someone else for the minor, that is to say, they must be made to his guardian or next friend. That statute negatives the right of a minor employee to institute and prosecute a claim for compensation for total and permanent incapacity in his own name."

See also Associated Indemnity Corporation et al. v. Billberg et al., Tex.Civ.App., 172 S.W.2d 157; Trinity Universal Ins. Co. v. Wallace, Tex.Civ.App., 187 S.W.2d 715.

If at the time the plaintiff entered into the compromise settlement agreement he was totally and permanently disabled and not joined therein by his guardian or next friend, the order entered by the Industrial Accident Board approving the settlement was voidable and should be set aside on the ground of the employee's minority. On the other hand, if plaintiff's disability was less than total and permanent, the compromise settlement agreement was in all respects valid and binding upon all parties thereto, even though he was not joined therein by his guardian or next friend.

The compromise settlement agreement filed with the Board recited that the facts and circumstances surrounding the infliction of plaintiff's injury was uncertain, indefinite and incapable of being satisfactorily established. Further, that the nature and extent and duration of the injury was uncertain, indefinite and incapable of being satisfactorily established.

Attached to such compromise settlement agreement and filed with the Board was a statement by plaintiff in which he said that about 3:30 P.M. Friday, March 14, 1947, he hurt himself pulling a net of greasy clothes out of a tub; that no one saw him do this, but the Chester Melton later saw him bend over with pain as his side was cramping. He further stated that he kept working and did not report his injury until March 19th when he told Mr. Folmar; that he had seen three doctors; that two of said doctors said he had a small hernia on the right side and the other said he saw no indication of a hernia; that his groin still hurt him when he did heavy work and that he intended to have an operation but wanted to wait for a while before doing

so; that he was 17 years of age, married, and that he was willing to compromise and finally settle the claim for $400 and that the settlement was approved by his parents, Mr. and Mrs. Jess Caffey.

Also attached to the settlement agreement and filed with the Board was a statement of Dr. White in which he said that he had examined the plaintiff and that his examination showed a slightly dilated right ring with a doubtful impulse on coughing, but that he did have a very definite thrill over the inguinal canal and that he thought it likely plaintiff had a small right indirect inguinal hernia.

The Industrial Accident Board impliedly found that the plaintiff's incapacity was not total and permanent by approving the compromise agreement. We cannot presume that the Board would have entered the order unless the minor was less than totally and permanently disabled, if he was not joined by his guardian or next friend. There is a presumption that the Board conducts its business in a lawful manner. We are also authorized to presume that the Board had before it facts necessary to authorize its action in taking jurisdiction of plaintiff's claim and approving the compromise agreement. McCormick & Ray, Texas Law of Evidence, page 94; Western Indemnity Co. v. Toennis, Tex.Civ.App., 250 S.W. 1098.

The law presumes that the Board will protect the rights of minors appearing before it and if the Board had determined that plaintiff was totally and permanently disabled it would have required the appearance of a guardian or next friend. Texas Employers Ins. Ass'n v. Goines, Tex.Civ. App., 202 S.W.2d 487.

Furthermore, it is our opinion that the statement of the plaintiff, together with the statement of the doctor attached to the compromise settlement, was sufficient evidence upon which the Board could find that the plaintiff was not totally and permanently disabled. It was not even conclusively established that plaintiff had a hernia at that time. An order or award of the Industrial Accident Board approving a compromise settlement agreement is binding upon all the parties there-

to and is a bar to any action brought by either of the parties until such settlement agreement and the approval of the Industrial Accident Board is set aside in an action brought for the purpose. Traders & General Ins. Co. v. Bailey, 127 Tex. 322, 94 S.W.2d 134. Before the plaintiff could set aside the compromise settlement on the grounds of his minority, the burden rested upon him to establish that at the time the Board approved the settlement that he was totally and permanently disabled and that he was not joined therein by his guardian or next friend. Stated another way, the burden was upon the plaintiff, in the event he was not so joined, to show that there was not substantial evidence before the Board to support its implied finding that his incapacity was not total and permanent.

There is another reason why we think the order of the Board approving the compromise settlement is valid. There is no question but that plaintiff, though a minor, could settle his claim even though it later was established that he was totally and permanently disabled if he acted by and through a guardian or next friend. The compromise settlement agreement was signed by plaintiff and he was joined therein by his father and mother. His father and mother signed as witnesses the receipt for $400 executed by plaintiff. Although it is not stated in the compromise settlement that the father and mother of plaintiff were acting as his next friends, in view of the fact that the proceedings before the Board are informal and it is not necessary that they be in any particular form, we have concluded that plaintiff was acting in this case in making the settlement through his father and mother as his next friends. The courts recognize that it is not necessary to use any particular phraseology to constitute the relationship of next friend between the minor and the party by whose aid he seeks to assert his rights. Martin v. Weyman, 26 Tex. 460; Gulf C. & S. F. Ry. Co. v. Styron, 66 Tex. 421, 1 S.W. 161. The parents were his natural guardians and the proper parties to appear as next friends in his behalf. We believe we are authorized to presume that the Board considered that they were appearing in such capacity.

We will next consider whether the evidence raised an issue, of fact on the question of fraud. Plaintiff alleged that the $400 paid him under the compromise settlement agreement was wholly inadequate to compensate him for his injuries and that the agent of the insurance company represented to him that $400 was more than he was entitled to under the law. We have carefully reviewed the evidence and it is our opinion that it does not raise a fact issue on the allegations of fraud.

The settlement with plaintiff was made by a claim adjuster for the insurance company. There is no evidence of any misrepresentations of any fact by said adjuster. There is no evidence that the adjuster told plaintiff that $400 paid him was more than he was entitled to under the compensation law as alleged by plaintiff. At the time negotiations were begun concerning the settlement, plaintiff was still working at the laundry. Before the settlement agreement was signed, plaintiff called a doctor of his own choice and obtained from him an estimate of what an operation for a hernia would cost. The doctor advised him that the approximate cost would be $250 and that he would probably be unable to work for a period of eight weeks following the operation. It was then agreed between plaintiff and the adjuster that the company would pay plaintiff the sum of $250, the estimated cost of the operation, and $150 for loss of time following the operation. It was the testimony of plaintiff that he did not desire to have an operation at that time for the reason that he owed a debt on his car and that he wanted to continue to work in an effort to meet his obligation on his car. The final settlement was reached at the home of plaintiff's father and in the presence of plaintiff's father and mother and was agreed to by them.

Plaintiff alleged he did not realize at the time he entered into the settlement agreement that his injuries were serious and would result in his total and permanent disability and asked that such agreement be set aside on this ground. Article 8307, Sec. 12, Revised Statutes, provides the Board may approve any compromise, adjustment or settlement made between the parties where the liability of the Association or the extent of the injury of the employee is uncertain, indefinite, or incapable of being satisfactorily established. The Board in its order approving the compromise settlement agreement found that the liability of the Association and the extent of the injury of the employee were uncertain, indefinite and incapable of being satisfactorily established. The evidence before the Board heretofore set out was sufficient to sustain such findings. According to the plaintiff, there was no witness to the accident. He continued to work after his alleged injury and did not make any report thereof until two or three days after he claimed he was hurt. It is further shown in his statement that the doctors who had examined him were not in agreement as to the extent of his injury. It is a reasonable construction of the evidence to say that plaintiff believed at the time he made the settlement he had a hernia and he made it and obtained the money thereunder for the purpose of paying for an operation to correct said condition. Instead of having an operation, he chose to submit to injections in his side for this purpose. Whether the operation would have been a success will never be known because it was never performed. There is no competent evidence that plaintiff, at the time he made the settlement, had an injury other than a hernia. It is very doubtful whether it shows that he had a hernia under the workmen's compensation law. There is no evidence that plaintiff was misled as to the extent of his injury by any statement of a representative of the defendant. Section 12 of Art. 8307, under which this settlement was made, contemplates that the extent of the injury was uncertain and that the parties to the settlement were taking a chance as to what might develop in the future with reference thereto. The plaintiff could not set aside the settlement on the ground that he was mistaken in his opinion at the time he made the settlement as to what the result of his injury would be. The evidence does not show conclusively that plaintiff was totally and permanently disabled when he was before the Board. If, as a matter of fact, he was then totally and permanently

disabled, as shown by subsequent events, but there was then uncertainty as to the extent of his injury or the liability of the company, and he was joined by his guardian or next friend, the order was valid. Estes v. Hartford Accident & Indemnity Co., Tex.Civ.App., 46 S.W.2d 413, writ ref. The evidence does not raise an issue of mistake as alleged by plaintiff.

The trial court properly instructed a verdict for the defendant.

The judgment is affirmed.