St. Paul Fire & Marine Insurance Company, Petitioner

V.

J. T. Murphree, Respondent

No. A-8548.   Delivered May 23, 1962
Rehearing Denied June 20, 1962
357 S.W. 2d 744

ASSOCIATE JUSTICES CULVER and GRIFFIN dissented.

*Crenshaw, Dupree & Milam,* Lubbock, *Max Addison,* Lubbock, with firm, for petitioner.

*Splawn & Maner,* Lubbock, *Tom H. Davis,* Austin, for respondent.

ASSOCIATE JUSTICE SMITH delivered the opinion of the Court.

This is a Workmen's Compensation case. Murphree's petition alleged a general injury to his back and that such injury occurred on April 30, 1959, while he was attempting to lift a tractor engine head while employed by Meadow Implement Company. Murphree pleaded that as a result of such injury he was totally and permanently disabled. He further pleaded, in the alternative, that the injury of April 30, 1959 aggravated a

previously existing physical condition "and that as a result of said accident (April 30th) and reinjury of his prior existing physical condition he is totally and permanently disabled from doing manual labor all within the terms and provisions of the Workmen's Compensation Act of Texas."

St. Paul pleaded a general denial and specifically pleaded as a defense that Murphree sustained injuries to his body both before and after the alleged April 30 accident and that "such injuries, singly or collectively, constitute the sole cause of any incapacity he may have had after April 30, 1959, or alternatively, after May 15, 1959, or alternatively, after September 1, 1959." The answer contained the further allegation that:

"\* \* \* defendant says that any incapacity plaintiff may have had after April 30, 1959 was contributed to by injuries sustained by plaintiff at times and places other than his employment with Meadow Implement Company, both before and after April 30, 1959."

The jury found that the combination of prior and subsequent injuries was not the sole cause of Murphree's incapacity. The jury did find, however, that certain injuries were sustained by Murphree before and after April 30, 1959, and that such injuries contributed an aggregate of 80% to his incapacity, as follows:

An injury in 1951 contributed 25%
An injury on June 28, 1957 contributed 25%
An injury on July 15, 1959 contributed 25%,

and that an injury on September 1, 1959 contributed 5%.

The trial court sustained Murphree's motion to disregard the jury finding that the June 28, 1957 injury contributed 25% to Murphree's incapacity on the ground that this injury was general and noncompensable. Judgment was thereafter entered for Murphree for total and permanent disability less 55% contribution by the two remaining prior injuries and the one subsequent injury. The Court of Civil Appeals affirmed the judgment of the trial court. 347 S.W. 2d 817.

St. Paul presents various points of error urging a reversal of the judgment of the Court of Civil Appeals. St. Paul's first six points of error present matters which, if sustained, would require this Court to reverse the judgments of both the trial court and the Court of Civil Appeals and remand the cause to the trial

court for a new trial. These points are directed at the action of the trial court in sustaining Murphree's motion in limine, the contention being that St. Paul was entitled to introduce evidence concerning claims, settlements, and payments arising out of any previous or subsequent injury sustained by Murphree.

St. Paul also contends that the ruling of the trial court on Murphree's motion in limine was broader than the motion itself and that in addition to the prejudicial error committed in excluding evidence of settlements, etc., the ruling of the Court effectively and prejudicially prevented St. Paul from introducing into evidence the original petition and amended petition filed by Murphree in his suit growing out of the injury alleged to have been sustained in September, 1959.

St. Paul presents two contentions which, if sustained, would require a reversal of both Courts' judgments and a rendition of judgment in favor of St. Paul. These points are: (1) that the verdict and judgment cannot stand in view of the jury finding that the subsequent injury of September, 1959, contributed 5% to the total and permanent incapacity found by the jury to have been sustained by Murphree from the prior injury of April 30, 1959; and (2) that there is no evidence to support the findings of the jury upon which the judgment was based.

Finally, St. Paul contends that it was error for the trial court to disregard the jury finding of the contribution of 25% by the prior noncompensable general injury sustained by Murphree on June 28, 1957. Should this Court overrule all other points, but sustain this one, then it would naturally follow that the proper judgment of this Court would be to reform and affirm the judgment of the trial court in favor of Murphree.

We have concluded to overrule all points and affirm the judgment of the Court of Civil Appeals for the reasons now to be stated.

■ The motion in limine, filed by Murphree and considered by the Court, recited that under the plain provisions of Article 8306, Subdivision 12c,[1] Vernon's Annotated Civil Statutes, St.

---

1. "Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; * * *."

Paul would be "only entitled to show what incapacity any previous injury to the one at issue contributed to and is not entitled to ask of the plaintiff or any other witness the dollar amounts of any settlements of claims".

The following colloquy between the district judge and counsel shows that the Court in sustaining this motion went further than the prayer contained in the motion in limine and ruled that an offer to introduce the pleadings would be in violation of the Court's action in sustaining the motion in limine:

"THE COURT: As I told you, I will sustain his motion requesting that any evidence of claims and settlements and payments arising out of any previous or subsequent injuries to the plaintiff will not be introduced in evidence before the jury. Of course, previous and subsequent injuries may be plead and proof made respecting them as to their effect and their contribution to the plaintiff's incapacity to work, but as to any claims or payments that were made, that should not be brought before them, according to this case that was submitted by counsel for the plaintiff. Now, then, you may dictate your exceptions, Mr. Addison.

"MR. ADDISON: Yes, sir, your Honor. I want to be clear. The Court has ruled that I am not permitted, for example, to introduce a claim filed by the plaintiff before the Industrial Accident Board; I would be limited to showing, if I can, that he had an injury at a certain time, and that he was off work for a certain time, but further than that I am not supposed to go, is that the ruling?

"THE COURT: That is the ruling, yes, sir."

This ruling effectively prevented counsel for St. Paul from even attempting to lay a predicate for impeachment. In developing the bill of exceptions, however, no attempt was made to lay a predicate for impeachment. St. Paul seems to have been primarily interested at that time in the amounts paid to respondent in settlement of his other claims. Murphree was also asked whether certain claims had been filed with the Industrial Accident Board, and whether he had filed through his attorneys the petition and trial amendment in the suit growing out of the September 8, 1959 injury. Copies of such claims and pleadings were made part of the bill, but Murphree was not interrogated with reference to the allegations contained therein.

■ Pleadings in other actions which contain statements inconsistent with the party's present position are receivable as admissions. See McCormick and Ray, Texas Law of Evidence, 2nd ed. 1956, Vol. 2, Sec. 1145, p. 34. However, it does not necessarily follow that the trial court committed reversible error in excluding the pleadings filed in the suit involving the September, 1959 injury. The essence of St. Paul's contention is that evidence of the claims, settlements and payments arising out of the previous and subsequent injuries to Murphree, as distinguished from evidence as to the injuries themselves, was admissible and would have established that the previous and subsequent injuries were, in fact, to Murphree's back, which was the injury claimed in the instant suit, which evidence would have been persuasive to the jury in resolving the extent of Murphree's back injury attributable to the particular injury involved in the present suit. This is also the purport of St. Paul's position with reference to the admissibility of Murphree's pleadings in his suit filed on February 3, 1960, for benefits growing out of the September 1, 1959 injury, the suit having been filed prior to the instant suit and settled before the trial of the case at bar.

St. Paul argues that it did not offer the pleadings for the purpose of convincing the jury that the September, 1959 injury was the sole and only cause of Murphree's incapacity, but "what Petitioner was trying to do was to show the jury that Respondent had previously claimed that the incapacity he had after September, 1959 was caused by that injury, and that he had previously claimed that he had a very good average wage for a year prior to September, 1959. What is important relative to the petition in Cause No. 5134 is that, had the jury known of Respondent's claims made for the September injury, the jury would have found that the September injury contributed a great deal more to the incapacity of Respondent than the mere 5% it did find."

St. Paul was permitted to and did interrogate respondent regarding his testimony in the suit growing out of the September injury. He admitted having stated on the other trial: (1) that some of the symptoms which followed the September injury existed for a short time but not for long after the April injury; (2) that his back could have been weaker after the April injury, but he was able to and did work; (3) that he did not know whether or not it was weaker; and (4) that his back quit hurting when he went to work for J. B. Knight, who was his employer at the time of the September injury. Murphree's wife testified that after he went back to work following the April injury he had no trouble with his back until the September accident;

that all she could tell was that he would say his back was weakened. With all of this testimony before it, the jury found, in effect, that 20% of Murphree's incapacity was caused by the April injury and 5% by the September injury. Under these circumstances, we cannot agree that the jury answers would have probably been any different if St. Paul had been allowed to read to the court and the jury the unverified allegations made by Murphree's attorneys in the suit based on the September injury. The error is, therefore, harmless and under Rule 503, Texas Rules of Civil Procedure, a reversal of the trial court's judgment is not authorized. That Rule specifically provides that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that an error of law has been committed by the trial court in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the petitioner as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the petitioner from making a proper presentation of his case to the appellate courts.

■ The action of the court in excluding evidence of the sums of money obtained by Murphree in settlement of other claims was proper. The amount paid in settlement of a compensation claim cannot amount to proof of the extent of the injury. The amount agreed upon in settlement, therefore, can have no bearing on the actual extent of the injury. See Great American Indemnity Co. v. Blakey, Texas Civ. App., 107 S.W. 2d 1002, wr. dism. 1937; Goodwin v. Texas Employers' Ins. Assn., Texas Civ. App., 73 S.W. 2d 660, wr. dism. 1934; Caffey v. Aetna Casualty & Surety Company, Texas Civ. App., 219 S.W. 2d 530, wr. ref. n.r.e. 1949.

■ The injury directly involved in this suit is alleged to have been sustained on April 30, 1959. Prior injuries and one subsequent injury are also involved. Evidence showing the nature and extent of these injuries was introduced before the jury. Such evidence was admissible, inasmuch as it is the extent of the prior and subsequent injuries that reduces the insurer's liability, not what the employee was paid in settlement of his claim growing out of the injury. The settlement agreements and the sums paid in settlement of other suits or claims could not serve the jury or the trier of the facts materially in determining the extent of the prior and subsequent injuries contributing to Murphree's disability. See Myers v. Thomas, 143 Texas 502, 186 S.W. 2d 811 (1945) ; Sullivan v. Missouri, K. & T. Railroad Company of Texas, 110 Texas 360, 220 S.W. 769; Ricks v. Smith, Texas Civ.

App., 204 S.W. 2d 12, wr. ref. n.r.e. (1947); Brinkley v. Liberty Mutual Insurance Company, Texas Civ. App., 331 S.W. 2d 423, no wr. hist.; City of Wichita Falls v. Chandler, Texas Civ. App., 348 S.W. 2d 48, wr. ref. n.r.e.

St. Paul's seventh and eighth points are presented and argued together. These points present the contention that (1) the trial court erred in entering judgment on the verdict in this case because there is no evidence that the injury of April 30, 1959 caused total permanent disability, and (2) that if the Court should hold that there is some evidence in the record to support these jury findings, then and in that event there is irreconcilable conflict with the jury findings in answer to Special Issues 27 and 28 that the injury sustained by Murphree in September, 1959 contributed to the April 30, 1959 incapacity to the extent of 5%.

■ St. Paul admits that it did not assign in its motion for new trial any error as to conflict. There was no assignment of error contained in the motion for new trial sufficient to bring this question to the trial court's attention. However, St. Paul contends that if in fact there is a fatal conflict, then such conflict cannot be waived, is fundamental and may be considered by the Court, citing Little Rock Furniture Manufacturing Co. v. Dunn, 148 Texas 197, 222 S.W. 2d 985. We cannot agree with this contention. The entry of judgment by a trial court on conflicting findings does not constitute fundamental error. See Ramsey v. Dunlop, 146 Texas 196, 205 S.W. 2d 979; McCauley v. Consolidated Underwriters, 157 Texas 475, 304 S.W. 2d 265.

We turn now to the contention that there is no evidence supporting the findings of the jury that Murphree sustained total and permanent disability as the result of the April, 1959 injury. We overrule this contention. The lay and medical testimony in this case support the findings of total and permanent disability. St. Paul argues that when the finding of the jury that the September, 1959 injury contributed 5% to Murphree's incapacity is considered, it is evident that there is no evidence to support the findings that Murphree sustained total and permanent disability as the result of the April, 1959 injury. This particular argument has nothing to do with the question of conflict and bears solely on the no evidence question. In view of the fact that this case was pleaded, tried, and submitted to the jury on the theory that the legal effect of a subsequent injury (September, 1959) is no different than that of a prior injury, and the fact that no contention is made that St. Paul is legally responsible

only for the incapacity that Murphree would have sustained absent the subsequent injury, St. Paul cannot be sustained in its contention that the jury findings that Murphree was totally and permanently disabled by the April injury are not supported by the evidence merely because the September, 1959 injury contributed 5% to Murphree's incapacity.

■ The jury found that following the April, 1959 injury, Murphree sustained some total incapacity as a result of this injury. It further found that at the time of the trial his total incapacity was permanent. For Murphree to recover for total and permanent incapacity, it was not necessary for the jury to find that the April, 1959 injury was the sole cause of his incapacity. See Texas Employers' Insurance Association v. Upshaw, Texas Civ. App., 329 S.W. 2d 144, wr. ref., n.r.e. (1959); Texas Indemnity Insurance Company v. Staggs, 134 Texas 318, 134 S.W. 2d 1026 (1940); Texas Employers' Insurance Association v. Ham, Texas Civ. App., 333 S.W. 2d 438, wr. ref, n.r.e. (1960); Texas Indemnity Insurance Company v. Dean, Texas Civ. App., 77 S.W. 2d 748, wr. dism. (1935).

This leads to our consideration of the remaining point presented in the petition for writ of error. The question presented is: Did the trial court err in disregarding the answers of the jury to Special Issues 21 and 22 that the June, 1957 noncompensable injury contributed 25% to Murphree's incapacity?

■ We hold that the word injury, as used in Section 12c, Article 8306, Vernon's Annotated Civil Statutes, as related to a general injury, means compensative injury. Unless the prior general injury is one for which compensation is provided under the terms of the statute, the insurer's or carrier's liability cannot be reduced by reason thereof. See Texas Employers' Insurance Association v. Clark, Texas Civ. App., 23 S.W. 2d 405, wr. dism. (1930); Texas Employers' Insurance Association v. Upshaw, supra; Texas General Indemnity Company v. Bledsoe, Texas Civ. App., 344 S.W. 2d 527, wr. ref. n.r.e. (1961); Southern Underwriters v. Grimes, Texas Civ. App., 146 S.W. 2d 1058, wr. dism. judg. corr. (1941).

The judgments of both the trial court and the Court of Civil Appeals are affirmed.

JUSTICE CULVER dissenting.

The Court in this case has held that the trial court erred

in refusing to permit the compensation carrier to offer in evidence the claimant's petition filed on account of the subsequent September injury, but has also held that the error was harmless in the light of the fact that the claimant was questioned as to the nature and extent of the injury he received in September. The jury found that five per cent of his total and permanent disability was a result of the subsequent injury.

The injury in this case was alleged to have occurred on April 30. Both petitions were filed by the same law firm. The allegations are so similar that one might have served as a model for the other. With respect to the April injury which formed the basis of this case, the allegations were as follows:

"* * * plaintiff was suddenly, accidentally and unexpectedly injured in that while he was pulling a tractor engine head and while in an awkward and strained position felt a tearing sensation in back and low back and as a result of said accident, plaintiff sustained and suffered the following injuries: Severe damage to plaintiff's back and low back with severe pain in both legs, with areas of anesthesia on the left leg on the anteri-lateral aspect from the hip to the knee, and postero-lateral from the knee to the ankle, narrowing of the interspace between the 4th and 5th lumbar vertebrae, displacement of the 5th lumbar segment to the right on the 4th; a cupping of the body of the 5th lumbar segment at its inferior plate, osteophytic spurring on the body of the 5th lumbar vertebrae, extreme nervous condition, together with rupture and contusion of all the nerves, ligaments, tendons, blood vessels, soft tissues and blood vessels and muscles in the plaintiff's back and low back all of which have rendered the plaintiff totally and permanently disabled under the provisions of the Workmen's Compensation Act of Texas."

The September petition alleged that:

"* * * plaintiff was suddenly, accidentally and unexpectedly injured in that while pulling a motor out of a combine and while in an awkward and strained position suddenly felt a burning and tearing sensation in his back and low back and as a result of said accident, plaintiff sustained and suffered the following injuries: severe damage to plaintiff's back and low back, with such severity that a spinal fusion operation was performed on plaintiff's back, tenderness over the scar where the fusion operation was performed, inability to stoop over or bend, constant and severe pain in his back and left

leg, areas of anesthesia on the left leg, sclerosis of the lower lumbar spine, a narrowing of the interspace between the 4th and 5th lumbar and the 5th lumbar and the 1st segment, together with a rupture and contusion of all the nerves, tendons, muscles, ligaments, soft tissue and blood vessels in plaintiff's back and low back, and all of which have rendered him totally and permanently disabled from performing manual labor under the provisions of the Workmen's Compensation Act of the State of Texas."

Both petitions in the alternative alleged that only if the plaintiff was mistaken then the accident reinjured and aggravated a previous physical condition and as a result he was totally and permanently disabled. Incidentally the September case was settled before this one came on for trial.

The September petition further alleged: "That by reason of the heretofore mentioned accident and resulting injuries which were sustained by him in the scope of his employment with J. B. Knight Company, he has been rendered and is totally and permanently disabled, with reference to performing labor, and that said disability was caused by reason of the said accident and resulting injuries heretofore described."

Although Murphree was cross-examined as to the September injury, nowhere was there shown nor permitted to be shown to the jury all of the bodily damage and impairment detailed in the September petition, the similarity of those claims to the ones made in the April petition and the repeated assertion of total and permanent disability as a result of the September accident and the consequential injuries. In the light of all of these claims the jury might well believe and probably would have found that at least the September injury contributed more than five per cent to the total and permanent disability which Murphree may have had at the time of the trial, and thus determine he was not totally and permanently disabled as a result of the April injury. There was no reason for the jury to believe that the September allegations were fictitious or not made in good faith. They constituted in effect a denial by Murphree that he had been totally and permanently disabled by reason of the April injury. The jury might also with reason have thought it rather incredible that the claimant would have asserted that he had been totally and permanently disabled twice within a period of four months. I think it reasonable to presume that the jury would have attached considerable weight to the allegations made

in the September petition. The ruling of the trial court should not be brushed aside as harmless error.

The jury found that Murphree as a result of the injuries received on April 30, 1959, sustained total incapacity. That the total incapacity began on April 30 and was permanent. The jury also found that the injuries received by Murphree on September 1, 1959, contributed to plaintiff's incapacity to the extent of five per cent. Obviously this constitutes a conflict. Both cannot be true. If the September injury contributed in any degree to the total and permanent incapacity then he was not permanently incapacitated on April 30. However, neither party objected to the submission of the issue relating to the September injury and I do not find in St. Paul's motion for a new trial any support for a complaint on this score.

I would reverse and remand the case for a new trial.

ASSOCIATE JUSTICE GRIFFIN joins in this dissent.

Opinion delivered May 23, 1962.