Pearl L. CROTHERS et vir, Appellants,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.

No. 17036.

Court of Civil Appeals of Texas.

Fort Worth.

June 20, 1969.

Rehearing Denied July 18, 1969.

Lowell E. Dushman, Fort Worth, for appellants.

James E. Wright, Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

This is a workmen's compensation suit. The parties will be referred to as they were in the trial court. Plaintiffs, Pearl L. Crothers, and husband, Joe Willie Crothers, initiated suit to recover benefits for total and permanent disability under the Texas Workmen's Compensation Act. Defendant is the carrier for All Saints Episcopal Hospital (herein referred to as All Saints) of Forth Worth, Texas. Plaintiff (Mrs. Crothers) alleged a back injury. The case was tried to a jury. Based upon the verdict of the jury a judgment in the sum of $20.94 and court costs were entered for plaintiffs, who have perfected this appeal.

The appeal is based upon sixteen (16) points of error as follows: (1) in allowing defendant to cross-examine plaintiff about a prior arrest for purposes of impeachment; (2 through 5) concern a 1964 automobile accident, injury and treatment involving Mrs. Crothers, and complaint is made that defendant was permitted to refer to this on voir dire and to cross-examine Mrs. Crothers, Dr. T. T. McGrath and to directly examine Dr. Joe Schooler concerning the accident, injury and treatment, over objections; (6 through 11) in permitting cross-examination of Mrs. Crothers about alleged "on-the-job" injuries at All Saints occurring on March 8, June 9 and September 29, 1966, one of which resulted from a bed hitting her shortly after commencement of her employment; (12) in admitting into evidence an employment application for work at National Linen Service; (13) failure to instruct the jury not to consider the unresponsive answer of a Dr. Armstrong; (14) in permitting counsel for defendant to read from Mrs. Crothers' deposition; (15 and 16) the cumulative effect of the errors complained of were calculated to cause and probably did cause the rendition of an improper verdict and judgment.

We affirm.

Pearl Crothers went to work at All Saints in February, 1966, as a maid. On October 2, 1966, she fell in a linen closet allegedly injuring her neck and low back. She was taken to the hospital emergency

room, examined and x-rayed by Dr. Richard Grammar, M.D. He told her to go to bed at home and apply heat to her back. Following that, plaintiff saw Dr. Grammer once in his office. He referred her to Dr. W. F. Armstrong, M.D., of the same clinic.

Dr. Armstrong examined plaintiff on October 12, 1966. He testified that he made a "pretty complete examination" of her, and could not find any evidence of definite injury to her back other than her alleged muscle soreness. Dr. Armstrong applied heat therapy to Mrs. Crothers' back and on October 18, 1966, (sixteen days after her alleged injury) he gave her a written release to return to work. In Dr. Armstrong's opinion plaintiff could do the usual tasks of a workman in the occupation in which she was employed, with no residual disability. He saw plaintiff two or more times.

Plaintiff stated she could not do her work, though she tried, and went to see Dr. Joe Schooler, M.D., who examined and x-rayed her on October 24, 1966. He could find no orthopedic disability other than a strain of plaintiff's low back and neck. He recommended she return to work "as soon as possible". He found no evidence of disc injury. His findings were tenderness and muscle spasm of the neck and low back. Dr. Schooler did find from x-rays of the plaintiff's lower spine that she had a spinal scoliosis (sideways curve) which had been previously demonstrated by x-rays of her spine taken in August of 1965. Those x-rays were made after she came to him complaining of low back and neck injuries received in an auto accident in August of 1965.

Plaintiff next went to T. T. McGrath, D. O. He examined and x-rayed her on October 25, 1966. His findings were tenderness and muscle spasm of the neck and low back. Dr. McGrath performed a myelogram. Both it and the x-rays were negative for disc injury. He treated plaintiff from October 25, 1966, to January 11, 1967, when he released her to return to her regular duties. He did not see plaintiff from January 11, 1967, until May, 1967, when he again began seeing her until her last visit to him on September 30, 1967.

Some two to three weeks after Dr. McGrath released plaintiff, on January 11, 1967, she returned to work at Modern Laundry, bagging and wrapping laundry. She worked there for about three months until she was laid off because her department was overstaffed. Her job at Modern Laundry required her to lift.

After being laid off at Modern Laundry, plaintiff worked one day at Clean Towel and Linen Service. The week following that, on April 25, 1967, she went to work at National Linen Service, where she was working at the time of the trial on September 12, 1968. Her job there is to fold sheets and towels and put them in boxes and bundles. According to her supervisor at National Linen Service the plaintiff has been an "excellent worker" who does "medium" woman's work with a way above average absenteeism record for a 5½ day average work week. Plaintiff's job at National does not require an extra strong back, but is one of the hardest jobs in the laundry, requiring stooping and bending over. According to the plaintiff she went to all three of the above named doctors of her own free will and accord.

In addition to the medical and subsequent work history, the record reflects that the plaintiff was making $50.00 per month more money at the time of trial than when she worked at All Saints.

All of the foregoing facts are undisputed in the record.

We agree with the appellee that when all of the uncontroverted facts revealed by the record are considered, including the medical testimony and work record, the plaintiff emerges as a person with a remarkably outstanding work history measured by present day standards and a very questionable medical history in support of her claim for total and permanent disability.

On cross-examination plaintiff was asked if at the time she filled out her employment application for employment at All Saints she had ever been arrested. She answered "No." The question and answer were not objected to. She admitted that she had answered "No" in response to the question about prior arrests in the application for employment. On further questioning the plaintiff admitted she had been arrested prior to filling out the application in which she had answered "No" to such question. It was at this point that plaintiff's attorney objected for the first time on the grounds that the prior arrest was not admissible for impeachment purposes as it did not involve moral turpitude and on the further grounds that the questions relating thereto were immaterial, irrelevant and collateral.

Such objections were not made promptly and were not specific. Withers v. Tyler County Lumber Company, 326 S.W.2d 173, 180 (Beaumont, Tex.Civ.App., 1959, ref., n. r. e.); Hix v. Wirt, 220 S.W.2d 530 (Waco, Tex.Civ.App., 1949, ref., n. r. e.).

The objections not only lacked specifications but were not based upon valid grounds. Dobb v. Perry, 145 S.W.2d 1103 (Eastland, Tex.Civ.App., 1940, no writ hist.).

The trial court, under the record in this case, did not commit reversible error in admitting such testimony into evidence for the purpose of impeachment.

Further, in our opinion the court was correct in allowing the defendant to cross-examine the plaintiff and her doctor and to offer other evidence about prior injuries. One of the doctors first saw the plaintiff on August 20, 1965, for alleged back injuries sustained in an automobile accident. Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex. Sup., 1963). This case is authority for cross-examination and admission of evidence of prior injuries on the issue of (1) producing cause; (2) inconsistent statements as exceptions to the hearsay rule;

and (3) for purposes of impeachment. See also St. Paul Fire & Marine Insurance Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1962).

Producing cause was clearly an issue in the case at bar in which plaintiff was claiming injury to her back.

For the reasons above stated it was not reversible error for the court to permit examination of witnesses as to alleged on-the-job injuries at All Saints Hospital. In each instance the plaintiff denied knowledge of any such alleged incidents except when a bed hit her in about March of 1966.

The cross and direct examination complained of by the plaintiff, in her points two through five and six through eleven, went to the question of producing cause which was placed in issue by her pleadings.

Complaint is made of the introduction into evidence of plaintiff's application for employment at National Linen Service on the grounds that a witness did not testify he knew her handwriting or saw her sign it. No objection was made to testimony that the plaintiff did fill out an application before going to work at National Linen Service. The application made subsequent to the injury which is the basis of this claim contained a denial of any prior on-the-job injury. It was not until all of such testimony was in that objection was made as to the admissibility of the application on the ground that the witness did not know the signature of plaintiff and did not see her sign it. The application for employment and an exhibit containing a signature admitted to be that of plaintiff were put into evidence. Thus, the jury was permitted to pass on whether or not the plaintiff's signature was affixed to the application and was furnished a standard of comparison upon which to base its finding.

Upon direct examination Dr. Armstrong stated very clearly that he was unable to find any injury to plaintiff's back other than muscle soreness. On cross-examination he was asked a series of ques-

tions about disc injuries. On the fourth such question the doctor answered that the plaintiff did not have a disc and he could not see why her attorney wanted to discuss them. We are of the opinion that the line of questioning pursued by plaintiff's counsel was a clear invitation to the response complained of. Considering the questioning as a whole we think Dr. Armstrong exercised considerable restraint. Under the circumstances the trial court did not commit reversible error in failing to instruct the jury not to consider the answer.

■ It is clear from the record that the plaintiff had been steadily employed for well over a year prior to the trial in which she was claiming to be totally and permanently disabled. It would seem proper, under such circumstances on cross-examination, to ask her if she was making such claim in the face of her employment record following October 2, 1966. When asked the same question again, after her attorney's objection, she answered, "I don't know." The objection was not reasserted as to the second question.

By her final points the plaintiff contends that in the event the errors complained of, standing individually, are not sufficient then such errors in combination or cumulatively were calculated to cause and probably did cause the renditon of an improper judgment. We disagree.

We have carefully reviewed the entire record in this case and have concluded that the judgment rendered was a correct one in view of the jury's verdict, which finds ample support in the record. The undisputed evidence in this case will support the verdict and judgment.

In our opinion the errors complained of, when considered singly or collectively, were not such as were calculated to and probably did cause the jury to render a verdict different from one it would have rendered in the absence thereof.

All points of error are overruled and the judgment of the trial court is affirmed.

Affirmed.