COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, Appellant,

v.

Cue Dee SQUYRES, Appellee.

No. 1181.

Court of Civil Appeals of Texas, Corpus Christi.

April 28, 1977.

Rehearing Denied May 19, 1977.

Allen V. Davis, Davis & Hale, Corpus Christi, for appellant.

Derryl L. Collins, Law Offices of William R. Edwards, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a suit to recover benefits under an accident policy of insurance. Cue Dee Squyres sued Colonial Life & Accident Insurance Company to recover both accrued and unaccrued monthly payments for the full eleven-year term of the policy, plus attorney's fees, court costs and the 12% statutory penalty. Trial was to a jury, which answered the issues favorably to plaintiff. Judgment was rendered that plaintiff have and recover from defendant $2,758.00 as benefits due under the policy from September 8, 1972 until July 6, 1976, plus the statutory penalty thereon in the sum of $330.96, less benefits previously paid, plus attorney's fees in the amount of $2,500.00, plus court costs and interest on the total amount of the judgment ($5,588.96) from date of judgment until paid. Defendant has appealed.

The parties will be referred to as "plaintiff" and "defendant," as they were in the trial court. The principal issues presented are whether the trial court erred in refusing to admit into evidence in the trial of this case certain portions of a motion in limine filed by plaintiff's attorney in a previously tried federal suit, wherein plaintiff in this suit was also plaintiff therein, and

whether the trial court erred in refusing to admit into evidence the verdict of the jury and the judgment of the court in the federal action.

Plaintiff purchased a disability accident policy from defendant on June 8, 1972. It provided, among other provisions, that under certain conditions, and subject to certain exclusions, plaintiff would be paid certain monthly benefits so long as he was disabled because of an on-the-job injury. The policy was in force and effect during all of the times material to this action.

On September 8, 1972, plaintiff did, in fact, suffer an on-the-job injury. On that date, while employed as a truck driver for Gulf Iron Works in Corpus Christi, Texas, he stepped on a rotten four-by-four on the bed of a truck. His leg went through the bed of the truck down to the drive line, and his body went backwards over the side of the truck. He remained in bed and off work some four weeks following this accident, then returned to Gulf Iron and attempted to work for four days, then remained at home another week. He attempted to work off and on until March 8, 1973, when, according to him, the pain and stiffness in his back became intolerable. He has not worked since that date.

Plaintiff testified that during the period October 1972, until March, 1973, while he attempted to work off and on, he could not perform the duties of a truck driver; that he had pain in his low back and could not stand any weight on his right side. He further testified that during that interval of time, when a load came up, his fellow employees took it for him, and he spent his time at work walking around and talking and hooking cables for the man on the crane.

Plaintiff consulted various doctors following the injury, and was eventually referred to Dr. Barnes, who first saw him on June 1, 1973. Dr. Barnes, who testified by deposition, diagnosed plaintiff's condition, as follows:

"I said I felt the patient had rather marked deterioration in his entire spine, but his most severe injury appeared to me to

have occurred between the fourth and fifth lumbar vertebrae in the low back because X-rays showed rather marked narrowing of this particular interspace."

On further questioning, Dr. Barnes said:

". . . It's reasonably probable that the patient damaged the pre-existing abnormal condition between the fourth and fifth lumbar vertebrae to the extent that he has not been able to regain his physical vigor or physical ability to work since the fall of September 8th, 1972."

Dr. Barnes further testified that plaintiff, in giving him his past medical history, did not mention any prior accidents, did not tell him that he had previously suffered a whiplash injury, and did not tell him that he had previously sustained damage to his sciatic nerve and pulled his hip out of joint. In response to the question as to whether the injury on September 8, 1972 was the cause of plaintiff's "present condition of the lumbar spine or whether it aggravated a pre-existing condition," he replied:

"I feel that the injury of September, 1972, did aggravate the pre-existing condition, certainly."

Dr. Barnes was also asked if he had an opinion in reasonable medical probability as to what caused the ruptured intervertebral disc situation which he described as causing the disability. He answered that question thusly:

"I feel that the fall in September, 1972, did precipitate or complete the rupturing of the intervertebral discs, a situation which had obviously been developing over the years as a result of progressive deterioration."

The testimony of Dr. Barnes concluded with the following statement:

"I think he is probably suffering in two areas, the L–4, L–5, interspace, the next to the last one which shows to be quite narrowed by X-ray and at the lumbosacral level on the right side, this evidence being supplied by the electromyographic studies and not by X-ray studies."

The jury found that plaintiff sustained, independently of all other causes, continuous total disability as a result of the bodily injury sustained by him on September 8, 1972, and that his total disability was permanent. Those findings are not challenged in this appeal.

Plaintiff, who had spent his work life primarily as a truck driver following his discharge from the Army after World War II, suffered two injuries prior to his injury on September 8, 1972. The first occurred in the 1950's while plaintiff was employed at Reynolds Metals, and the second was in 1969 while he was driving for Inland Motor Freight Lines. The Reynolds injury was to plaintiff's left hip. He stated that the doctor told him that it pinched the sciatic nerve. After he recovered from this injury, plaintiff performed logging work in East Texas for approximately two and one-half years. The hip injury did not bother plaintiff at all while he was logging; in fact, he had no trouble at all performing logging work or as a line driver until 1969 when he was in a collision while driving for Inland.

The collision referred to above resulted in an injury to plaintiff's neck. This was the only injury he suffered in that collision. Afterwards, plaintiff returned to work for Inland, but was unable to drive on the line due to his neck, and Inland put him on the dock checking freight. Due to his inability to drive on the line, plaintiff lost his job with Inland, and after being off work for several months, got a job as a security guard. During his employment as a security guard, plaintiff took therapy treatments for his neck under Dr. Norstrom, and when the condition improved, he went to work for Gulf Iron Works. While with Gulf Iron, plaintiff testified that he did not have any physical difficulties in performing his job until he was injured on September 8, 1972.

Plaintiff, prior to the filing of this suit, filed suit in connection with his injury which he sustained in the 1950's and also filed to recover workmen's compensation benefits for his 1969 injury. The latter suit was against Liberty Mutual Insurance Co., Civil Action No. 70–C–71, in the District Court of the United States for the Southern District of Texas, Corpus Christi Division, hereinafter referred to as the "federal court action."

Defendant, who contended that plaintiff's disability did not result directly, independently and exclusively of all other causes from bodily injuries caused solely by the accident of September 8, 1972, at the trial in this case, sought to introduce into evidence a motion in limine that was filed by plaintiff's attorney in the federal action, a certified copy of verdict, and a certified copy of the judgment which was rendered in that action. The trial judge refused to permit those documents, which appear in the record by bill of exceptions, into evidence. Defendant complains of that action in its first three points of error.

Defendant, in its first point of error, contends that the trial court erred in refusing to admit into evidence "all or any part of the first sentence of paragraph VII and the first sentence in paragraph IX" of the motion in limine.

The first sentence of paragraph VII reads:

"Plaintiff would show that many years ago, in the 1950s, a suit was filed on behalf of Plaintiff in which an allegation was made that Plaintiff was totally incapacitated permanently. Any reference to any claim of "permanent" incapacity or disability in such suit does not constitute a judicial admission, but is rather but a prediction, and, under the authority of *Hartford Accident & Indemnity Co. v. [Mc]Cardell*, 369 S.W.2d 331 (Tex.Sup.Ct., 1963), such matter is wholly immaterial and irrelevant, prejudicial to the Plaintiff and not admissible in this case."

The first sentence of paragraph IX reads:
"The suit referred to above resulted from an injury to the Plaintiff, involving primarily his lumbo sacral spine. Unless and until the Defendant is in a position to produce evidence that any injury sustained by the Plaintiff in the 1950s is a producing or the sole cause of his persent (sic) incapacity, the fact of such injury is wholly immaterial and irrelevant to any

issue in this case and the introduction of any evidence of the same before the jury would be prejudicial to the Plaintiff and confusing to the jury. . . ."

The offer of parts of the motion was couched in the following words:

". . . to offer part of a motion in limine filed in that case by Mr. William R. Edwards as attorney for Mr. Squyres in which he asks the Court to not permit any reference to a claim of permanent incapacity or disability from a suit in the 1950s, and then went on to make this statement: 'The suit referred to above resulted from an injury to the Plaintiff, involving primarily his lumbosacral spine.' "

\* \* \* \* \* \*

". . . All I want to get in evidence is that in the case in Federal court in 1971, Mr. Squyres' lawyer, Mr. Edwards, filed a motion in limine asking that nothing be said about his having, in the 1950s, a suit in which he claimed total and permanent disability. And also offered in that connection with that motion, Mr. Edwards as attorney for Mr. Squyres stated as a fact that the injury in the 1950s was primarily —it's there in writing; I'm not quoting it exactly—primarily an injury to the lumbar spine."

Defendant, in its brief, sums up its position in the following statement:

"Under the provisions of the policy, for plaintiff to recover he had the burden of proving that the condition of his lumbosacral spine resulted directly, independently and exclusively of all other causes from bodily injuries effected solely by accident arising out of or in the course of plaintiff's occupation or employment, and that the condition of his low back was not caused directly or indirectly by disease or bodily infirmity. Therefore, whether plaintiff sustained an injury to his lumbosacral spine by the accident in the 1950s was very material."

■ It is settled law in this State that pleadings in other actions which contain statements of fact which are inconsistent with the party's present position are admissible in evidence as admissions. *Hartford Accident & Indemnity Company v. McCardell*, 369 S.W.2d 331 (Tex.Sup.1963); *L. J. Beseda v. Transamerica Insurance Company*, 414 S.W.2d 742 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). However, the statement in the prior pleading that plaintiff was "totally incapacitated permanently" is a mere prediction, not an allegation of fact. *Hartford Accident & Indemnity Company v. McCardell*, supra. Such an allegation is not admissible for impeachment, and where properly objected to, is irrelevant to any other issue in the case. *St. Paul Fire & Marine Insurance Company v. J. T. Murphree*, 163 Tex. 534, 357 S.W.2d 744 (1962), statement was clearly inadmissible under the objection lodged by plaintiff. The burden was on defendant to delete the inadmissible matter, and having failed to do so, the trial court did not err in rejecting the offer. 1 C. McCormick & R. Ray, Texas Evidence, § 21 (2d ed. 1956).

■ The statement in the first sentence in paragraph IX of the motion in limine "The suit referred to above resulted from an injury to the Plaintiff, involving primarily his lumbo sacral spine," even if properly offered, was inadmissible, because it was immaterial to whether the 1972 injury resulted in total and permanent disability.

Plaintiff testified that he recovered from the Reynolds injury and that it gave him no trouble either performing logging work or as a line truck driver. Since plaintiff went to work for Inland in 1957 and had performed logging work for two and one-half years prior to that, all subsequent to the Reynolds injury, the Reynolds injury predated the injury at issue here by at least eighteen years. That testimony was uncontroverted. In the absence of any evidence which connects the back injury in the Reynolds injury case with the injury or disability at issue in the present case, the first sentence in paragraph IX cannot be held as having any bearing on any material issue here presented. The statement was inadmissible when challenged (as it was) by plaintiff.

■ Moreover, if the trial court did err in refusing to admit the first sentence in paragraph IX of the motion in limine into evidence, the error was not reversible error. Plaintiff freely admitted that he had suffered an injury to his hip in the 1950's, and that a doctor had told him that the sciatic nerve had been pinched. Defendant fully developed this and the neck injury at trial. The most that the excluded statements would have shown was that plaintiff's lawyer thought that the Reynolds injury was to plaintiff's back. Counsel for defendant questioned Dr. Barnes concerning the hip and sciatic nerve injury, and asked him whether, in light of these injuries, the accident of September 8, 1972, aggravated a preexisting condition. Dr. Barnes's response was favorable to Defendant. Defendant had an opportunity to question Dr. Barnes with respect to prior back injuries and present that evidence to the jury, or on a bill of exception, but did not do so.

■ Dr. Barnes testified that plaintiff is suffering from ruptured intervertebral discs at L4–L5 and at the lumbosacral level on the right side. Plaintiff testified, and Dr. Barnes was asked to assume, that plaintiff was able to perform his duties without any problems with his back just prior to the September 1972 injury. Dr. Barnes was asked also to take into account preexisting conditions including degeneration due to aging and the hip sciatic nerve injury and neck injury. Under those assumptions, his opinion was that ". . . the fall in September, 1972, did precipitate or complete the rupturing of the intervertebral discs, a situation which had obviously been developing over the years as a result of progressive deterioration." In that state of the record, the exclusion of the first sentence in paragraph IX of the motion, if error, was harmless and did not amount to such a denial of defendant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.; *St. Paul Fire & Marine Insurance Company v. J. T. Murphree*, 163 Tex. 534, 357 S.W.2d 744 (1962); *Aetna Casualty & Surety Company v. Tucker*, 418 S.W.2d 382 (Tex.Civ.App.—Beau-

mont 1967, writ ref'd n. r. e.). Defendant's first point is overruled.

Defendant further offered into evidence certified copies of the jury verdict, the judgment and the release of judgment in the federal court action which was tried in 1971. Plaintiff, in that case was suing for the recovery of workmen's compensation benefits following his 1969 injury. The documents were offered for the purpose of impeaching plaintiff's testimony "in which he testified that his health was perfect just prior to the September, 1972 accident. Plaintiff objected to the admission of the documents into evidence on several grounds, including the ground that they were not relevant to any issue in the case. The objections were sustained. Defendant, in its second, third and fourth points of error, complains of the refusal by the trial court to admit the documents into evidence.

■ The verdict and the judgment in the federal action are not statements made by plaintiff, but are statements made by the jury and the trial court in an unrelated matter involving a different defendant and different facts. The matters adjudicated in the prior suit are not material to any issue in this case, and even if they were, a verdict and a judgment in a prior suit is admissible to show matters adjudicated only where the parties and subject matter in the two suits are the same, which is not the situation here involved. See 2 C. McCormick & R. Ray, Texas Evidence, § 1279 (2d ed. 1956). The release of the judgment would have shown only that plaintiff received $18,-115.42 in the 1971 federal action for the 1969 injury, which was of no concern to the jury in the present action. Neither the verdict nor the judgment nor the release of judgment was admissible in this case. Defendant's second, third and fourth points are overruled.

In the fifth point of error, defendant contends that the court erred in rendering judgment for monthly payments under the insurance policy in question from September 8, 1972 until July 6, 1976, less benefits from September 8, 1972 until October 29,

1972, because plaintiff's own testimony showed that plaintiff worked from October 30, 1972 until March, 1973.

The jury, in Special Issue No. 1, was asked:

"Do you find from a preponderance of the evidence that Cue Dee Squyres sustained, independently of all other causes, continuous total disability as a result of accidental bodily injuries sustained on September 8, 1972?"

The following definitions were given by the trial court in connection with the submission of Special Issue No. 1:

"The term, 'total disability,' as used in this issue does not mean a state of complete or absolute inability to do any work or transact any business, but total disability exists if Plaintiff cannot substantially perform, in the exercise of ordinary care, every material duty pertaining to his occupation.

The word 'continuous' as used in this issue does not mean constant nor does it denote ceaselessness and absolute continuity. It means regular, protracted, enduring, and without any substantial interruption of sequence."

Defendant did not object to the submission of Special Issue No. 1 and the accompanying definitions.

Defendant states in its brief that "there is no testimony whatever showing how many days between October 30, 1972 and sometime in March, 1973, that plaintiff worked." The argument is made that the evidence is wholly insufficient to justify a recovery for that period of time. We do not agree.

Under the definition submitted by the trial court in its charge concerning "total disability" and "continuous," there was sufficient evidence to support the jury's finding that plaintiff sustained continuous total disability as a result of accidental bodily injuries sustained on September 8, 1972. Plaintiff's testimony that after September 8, 1972, he could not perform his work as a truck driver and that the other employees carried him on the days he attempted to work has already been stated in some detail. This testimony was uncontradicted. Defendant's fifth point is overruled.

The judgment of the trial court is AFFIRMED.