**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Bob HAUNSCHILD, Appellee.**

No. 8566.

Court of Civil Appeals of Texas, Amarillo.

Aug. 29, 1975.

Rehearing Denied Sept. 22, 1975.

Gibson, Ochsner, Adkins, Harlan & Hankins, S. Tom Morris, Amarillo, Vial, Hamilton, Koch, Tubb, Knox & Stradley, for appellant.

Charles H. Smith and C. L. Mike Schmidt, Jr., Dallas, for amicus curiae.

Edwards, Smith & Associates, Thomas S. Hoekstra, Amarillo, Thompson, Knight, Simmons & Bullion, David S. Kidder, Dallas, for amici curiae.

REYNOLDS, Justice.

In this workmen's compensation case the trial court, after disregarding jury findings that a prior compensable general injury contributed sixty-five percent to the workmen's incapacity following the general injury in suit, entered judgment awarding full compensation for the present incapacity. The sole question presented is whether, after the 1971 amendment to the Texas Workmen's Compensation Act, the insurance carrier's liability for a general injury incapacity is still reduced by the percentage of incapacity contributed by a prior compensable general injury. We hold that it is not. Affirmed.

The facts of the case may be stated briefly. From a November 10, 1972 fall during his employment by Armour & Co., Bob Haunschild received low back and neck injuries for which medical care and workmen's compensation benefits were provided by Texas Employers' Insurance Association. In April of 1973, Haunschild returned to work where, on July 10, 1973, he slipped while going down stairs and suffered injury. He received medical treatment which included two operations on his neck. He had not returned to work at the time of the trial in November of 1974.

The jury found that Haunschild's July 10, 1973 injury produced partial incapacity from July 12, 1973, through October 1, 1973, produced total incapacity beginning October 2, 1973, and ending January 28, 1975, and produced partial incapacity beginning January 29, 1975, and ending June 29, 1975. The jury found further that Haunschild's November 10, 1972 injury contributed sixty-five (65%) percent to his present incapacity.

T.E.I.A.'s motion for judgment on the verdict, the granting of which would have resulted in a judgment for $1,775.75, was denied. Haunschild's motions to disregard the jury's findings of contribution by his prior injury and for judgment on the remainder of the verdict were granted, the trial court entering judgment in Haunschild's favor for $5,073.47.

Prior to Haunschild's first injury, the legislature amended, effective September 1, 1971, Sections 12c and 12c–1 of Vernon's Ann.Civ.St. art. 8306, to read:

Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable for all compensation provided by this Act, but said association shall be reimbursed from the "Second Injury Fund" as hereinafter described, to the extent that the previous injury contributes to the combined incapacity.

Sec. 12c–1. If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable for all compensation provided by this Act, not to exceed 401 weeks, but said association shall be reimbursed from the "Second Injury Fund," as hereinafter described, to the extent that its payment exceeds the amount due for the second injury as above set out.

. . .

Thereafter, there came before the Supreme Court the case of *Transport Insurance Company v. Mabra*, 487 S.W.2d 704 (Tex.1972), which arose and was decided under the law existing before the amendment, presenting procedural and evidential issues bearing on the propriety of diminishing the claimant's recovery for general injury incapacity by the percentage of the incapacity contributed by a prior compensable general injury. In approving the diminution, the Court made passing reference to the 1971 amendment in this language:

. . . A statute, since amended, provided for a diminution of recovery because of a previous incapacity. Section 12c, Article 8306.

\*     \*     \*     \*     \*     \*

In order for there to be a reduction in the amount of the award under the old Section 12 of Article 8306 under which this case was tried, the previous injury must have been one which was compensable under the workmen's compensation law. *St. Paul Fire & Marine Ins. Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744 (1962). . . .

Following the 1971 amendment, there appears to be only one appellate decision addressing the question before us. In *Texas Employers' Insurance Association v. Creswell*, 511 S.W.2d 68 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.), the court declared:

We hold, under the amended section 12c, that proof of a prior compensable injury will no longer reduce the recovery of a workman because of such prior injury.

Notwithstanding the *Creswell* declaration, T.E.I.A. contends that the 1971 amendment did not make it liable for all compensation provided for the combined incapacity produced by multiple compensable general injuries. T.E.I.A. initially suggests that *Creswell* merely states a holding and, since no attention whatsoever was given there to the problems of statutory construction, the holding is not entitled to weight and we should make an independent analysis to determine the scope of the 1971 amendment. The analysis is proper, T.E.I.A. submits, because by applying the rules for statutory construction it will reveal that the legislature, while imposing full liability on the carrier for the combined effects of specific injuries producing total and permanent incapacity, did not change the law which permitted the carrier a deduction for the incapacity contributed by a prior compensable general injury.

To the extent that the declaration in *Creswell* was not necessary to dispose of the appellate issues set out in the opinion, the declaration is probably dictum. It is proper, therefore, that we independently consider the question in the light of the various facets of T.E.I.A.'s contention.

A provision in the 1917 Texas Workmen's Compensation Act, codified as Vernon's Ann.Civ.St. art. 8306, and reproduced as marginal note 1,[1] limited the workmen's compensation insurance carrier's liability, in the event the injured workman had suffered a condition of incapacity attributable

---

1. Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury.

to both a prior and a subsequent injury, to the compensation to which the workman would have been entitled had there been no previous injury. The plain terms of the proviso caused the court, in *Gilmore v. Lumbermen's Reciprocal Ass'n.*, 292 S.W. 204 (Tex.Com.App.1927, jdgmt. adopted), to limit the carrier's liability to the compensation specified for the loss of sight in one eye resulting from the employment injury, although that injury, coupled with preemployment accidental loss of sight in the other eye, produced a condition defined in another provision of the Act as conclusive of total and permanent incapacity. The court rationalized that the legislature, choosing between encouraging employment of a person partially disabled from a prior injury or adequately compensating a partially disabled workman who becomes disabled from the combined effects of a prior and a subsequent injury, opted for the policy of encouraging employment by enacting Sec. 12c limiting liability of the carrier to the disability produced by the subsequent injury.

*Gilmore* settled the law that, in situations of specific injuries, Sec. 12c applied to limit the carrier's liability to the compensation for the second injury; however, after the pronouncement in *Texas Employers' Insurance Ass'n. v. Clark*, 23 S.W.2d 405 (Tex. Civ.App.—Eastland 1929, writ dism'd), that the word "injury" is used in Sec. 12c to mean a compensative injury under the workmen's compensation law, Sec. 12c did not operate in cases of separate general injuries to reduce the carrier's liability to pay for all disability produced by the second injury unless the first injury was compensable. See *Miears v. Industrial Accident Board*, 149 Tex. 270, 275, 232 S.W.2d 671, 674 (1950). If the prior general injury was compensable, the operation of Sec. 12c entitled the carrier to proper jury issues determining the liability of the carrier only for the incapacity produced by the subsequent general injury. *Accord, Sowell v. Travelers Insurance Co.*, 374 S.W.2d 412, 413 (Tex. 1963). Thus, from the judicial construction given Sec. 12c by *Gilmore* and *Clark*, their progeny perpetuated the apparent conflict in applying the statute; Sec. 12c was applied literally to all cases of multiple specific injuries, but in cases of multiple general injuries it was not made applicable unless the prior (and later, a subsequent) injury was compensable.

In 1947, the legislature moved to correct the inadequacy of the compensation award without discouraging employment of the physically handicapped. As copied in marginal note 2,[2] Sec. 12c was re-enacted with an addendum referring to the creation of a "Second-Injury Fund" from which the employee who suffered a subsequent injury "shall be compensated for the combined incapacity resulting from both injuries." There was added Sec. 12c–1, reproduced as marginal note 3,[3] distinctly declaring that if an employee, having previously suffered a specific injury, becomes permanently and totally incapacitated as the result of another specific injury, the carrier is liable to the

2. Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the "Second-Injury Fund" hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries.

3. Sec. 12c–1. If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as "Second-Injury Fund," hereafter defined.

employee only for the compensation payable for the second specific injury, and the second-injury fund is liable to the employee for the remainder of the compensation due for the total permanent incapacity. The mechanics of the creation of the "Second-Injury Fund" were set forth in a new Sec. 12c–2.

In speaking to the 1947 amendment in *Miears v. Industrial Accident Board,* supra, the Supreme Court reaffirmed the applicability of Sec. 12c as construed in *Gilmore* to separate specific injuries, and referred to, but declined to decide, the unraised question whether the amendment had the effect of changing the meaning to be given to the word "injury" as used in Sec. 12c. Twelve years later in *St. Paul Fire & Marine Insurance Company v. Murphree,* 163 Tex. 534, 357 S.W.2d 744, 749 (1962) the Court confirmed that the word "injury" as used in Sec. 12c in relation to general injury means a compensative injury and stated, "Unless the prior general injury is one for which compensation is provided under the terms of the statute, the insurer's or carrier's liability cannot be reduced by reason thereof." *Murphree* also established that the carrier was not liable for the incapacity contributed by a compensable general injury subsequent to the general injury in litigation. Then, in 1963, in *Sowell v. The Travelers Insurance Co.,* supra, the Court held that under Sec. 12c the carrier was entitled to a determination of the percentage of incapacity contributed by prior compensable specific and general injuries, stating: "Section 12c makes no distinction between specific and general injuries, and we are unwilling to write such a distinction into the statute."

In the interval between the decision in *Miears* and the decisions in *Murphree* and *Sowell,* the Supreme Court considered in *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711 (1961), the question whether the second-injury fund was liable where the injured workman sustained partial and permanent incapacity from general injuries. According to the court of civil appeal's opinion, Keaton had sustained in a football game a non-compensable general injury to his left leg, which was further injured in an automobile accident, and afterwards, while he was in the course of his employment, Keaton sustained a compensable general injury to his right leg. After Keaton and his employer's insurance carrier had compromised and settled his claim for the compensable injury to his right leg, Keaton sought to recover from the second-injury fund the remainder of the compensation for the stipulated partial and permanent incapacity produced by the combination of that compensable general injury and the prior non-compensable general injury to his left leg. Keaton based his cause of action against the second-injury fund on Sec. 12c.

The trial court and the intermediate appellate court decreed that Keaton could recover from the second-injury fund the difference between the compensation provided for the combined incapacity and the amount of his settlement with the carrier. The court of civil appeals held that recovery was authorized by Sec. 12c, which contains no language requiring the combination of two injuries to produce total and permanent disability, and that Sec. 12c–1, referring to specific injuries producing total and permanent disability, was inapplicable to the facts of the case. The Supreme Court disagreed, holding that the amendment did not permit recovery from the second-injury fund for partial and permanent disability resulting from general injuries. Concluding from the statutory language that the legislature intended only specific injuries producing total and permanent incapacity would give rise to liability on the part of the second-injury fund, the Court wrote:

> . . . Section 12c does not create a cause of action within itself. The bounds of liability are only found in Section 12c–1 of Article 8306, supra. The restrictive provisions of Section 12c–1, supra, limit the liability of the Second Injury Fund to situations involving a combination of *specific injuries* resulting in total

and permanent incapacity. Neither combinations of *general* injuries nor injuries resulting in *partial* disability are compensable from the Second Injury Fund.

Parenthetically, it is noteworthy that, insofar as the *Keaton* opinions reveal, no consideration was given to the thought that Sec. 12c was inapplicable as a basis for Keaton's cause of action in the light of the pronouncement in *Texas Employers' Ins. Ass'n. v. Clark,* supra, (as well as in *Murphree,* written by Justice Smith after he authored the Supreme Court's opinion in *Keaton* ), that the statute did not apply unless the prior general injury was compensable under the workmen's compensation act. Under that prevailing authority, the non-compensable character of Keaton's prior general injury rendered Sec. 12c inapplicable and resulted in the carrier being liable for all incapacity for which the subsequent general injury was the producing cause. Thus, the payment of compensation by the carrier for that incapacity would discharge all liability for the combined effects of the two injuries.

At this stage of the law under the 1947 amendment, the legislature moved to enact, without stating the specific reason for, the 1971 amendment. Re-enacted in the same language was that portion of Sec. 12c directed to the condition of incapacity contributed to by multiple injuries, which the courts consistently had held to be applicable when separate compensable general injuries combined to produce the present incapacity; however, the legislature amended the portion of the statute pertaining to the carrier's liability by substituting the words *for all compensation provided by this Act* in lieu of the previous words *for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury.*

In viewing the amendment, the cardinal rule as expressed in V.A.C.S. art. 10, subd. 6, is to "look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Generally, the intent is obtained primarily from the language of the statute, *Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929 (1935), and usually words in common use are to be considered in their natural, plain and ordinary signification. *Winder v. King,* 1 S.W.2d 587 (Tex.Com.App.1928). There is, however, the exception that when the legislature has not defined a word whose meaning has been construed by the courts, it is presumed that the legislature, in using the word without defining it in the enactment of a statute pertaining to the same subject matter, deliberately intended the word to carry the meaning theretofore given it by the courts. *McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125 (1942); *Smith v. Texas Co.,* 53 S.W.2d 774 (Tex.Com.App.1932, holding approved). Moreover, all statutes are presumed to be enacted by the legislature with full knowledge of, and with reference to, the existing conditions of the law. *McBride v. Clayton,* supra.

Prior to the 1971 re-enactment of the unchanged portion of Sec. 12c, it had been the subject of judicial construction. By construing the word "injury" in this portion of the statute to mean a compensable injury under the Act, the courts made the statute applicable to cases of multiple general injuries where, as here, the prior general injury was compensable. The legislature was chargeable with this knowledge and if it had intended the word "injury" to carry a different meaning in the enactment, it would have been a simple matter to so state. The presumption, then, is that the legislature intended the re-enactment to apply as it had been judicially construed. Chargeable with this knowledge, the legislature then employed plain, ordinary words to provide that the carrier shall be liable for all compensation provided by the Act for the combined incapacity. Consequently, we hold that the workmen's compensation insurance carrier's liability for the incapacity produced by the combined effects of multiple general injuries is not reduced by the percentage of incapacity contributed by

compensable general injuries other than the one in suit.

We should note that an amicus curiae brief in support of T.E.I.A.'s position urges that we construct a judicial doctrine permitting a reduction of liability in cases of multiple compensable general injuries in the same manner that the judicial doctrine was created to permit a reduction for subsequent compensable general injuries which are not mentioned in the statute. In other words, it is suggested that Sec. 12c not be made applicable to a prior (or a subsequent) compensable general injury to prevent the unjust enrichment of a claimant who has suffered a previous injury. Implicit in our determination of the legislative intent in enacting the amendment is the conclusion that the legislature did not intend that Sec. 12c be given this meaning.

To hold, as we have, that in a general injury case the carrier is not entitled to a reduction for the percentage of incapacity contributed by another compensable general injury is, in T.E.I.A.'s view, erroneous for two reasons. First, T.E.I.A. directs our attention to the title of the amendment which, so far as material here reads:

> An Act amending the employers' liability and workmen's compensation laws of this State; amending Sections 12c, 12c–1 and 12c–2 of Article 8306, Revised Civil Statutes of Texas, 1925, as amended, to make the Texas Employers' Insurance Association liable for all compensation in Second Injury Fund cases but allowing reimbursement from the Second Injury Fund to the extent the previous injury contributed to the combined incapacity;

.  .  .

Then T.E.I.A. argues that a consideration of this caption, and particularly the second clause thereof, with the provisions of the amendment, and particularly Sec. 12c–1 thereof, reflects that the legislature changed the carrier's liability only in second-injury fund cases. This is because, T.E.I.A. further argues, the caption states the amendment is to make the carrier liable for all compensation in second-injury fund cases and Sec. 12c–1 directed to specific injuries resulting in total and permanent disability is, as held in *Keaton*, the only provision which gives a right of recourse against the second-injury fund. Otherwise, T.E.I.A. concludes, there is imposed upon it a liability to pay twice for the first general injury without any reimbursement from the second-injury fund which is not liable in cases of general injuries.

Whether the language used to amend the carrier's liability had the effect of making all situations of multiple injuries second-injury fund cases, as Haunschild would have us hold, so that the carrier may be reimbursed from the second-injury fund is a matter we do not reach. That collateral matter is not a decidable issue necessary to the decision we have reached under the facts of this case; it is a matter that should be considered and resolved in a case directly presenting that question. Suffice it to state, however, that any consideration of the consequences of the new Sec. 12c does not justify a departure from the meaning of the words the legislature used to express its intent, *Winder v. King*, supra, even if it should appear that the statute is impracticable, *State Board of Insurance v. Betts*, 158 Tex. 612, 315 S.W.2d 279 (1958), or that it may operate somewhat unequally on contending litigants. *San Antonio General Drivers, Helpers Local No. 657 v. Thornton*, 156 Tex. 641, 299 S.W.2d 911 (1957).

Second, T.E.I.A. says that if Sec. 12c is construed, as we have, to impose liability on the carrier for all incapacity produced by the combined effects of general injuries, the section violates Article 3, Section 35, of the Texas Constitution by imposing a new liability contrary to the title of the amendment. As pertinent to the issue here, Sec. 35 of Art. 3 provides that no bill shall contain more than one subject which shall be expressed in its title, and any subject embraced in the bill that is not expressed in the title shall be void.

The manifest purpose of Art. 3, Sec. 35, is to require the caption of a bill to give the members of the legislature and the public reasonable notice of the object and scope of the law so as to prevent fraud and deception in the enactment of laws. While the constitutional provision operates to void any provision of a statute that is not expressed in its title, the provision does not require the title to be as full as the bill itself. *Central Education Agency v. Independent School Dist. of City of El Paso*, 152 Tex. 56, 254 S.W.2d 357 (1953). It requires only that the title state the general subject; it need not explain the details. *Robinson v. Hill*, 507 S.W.2d 521 (Tex.1974). "It is sufficient if the provisions of the statute relate, directly or indirectly, to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title." *Central Education Agency v. Independent School Dist. of City of El Paso*, supra.

Tested by the challenge, the statute does not impose a new liability that is contrary to its title. Although the title is more specific with reference to the carrier's liability in second-injury fund cases, the title is not deceptive. It sufficiently expresses the general subject of the carrier's liability in workmen's compensation cases to be amended by the legislature. The statutory provisions are of the same nature, they have a mutual connection, and they are not foreign to the subject expressed in the title. We, therefore, cannot say that Sec. 12c is unconstitutional.

The judgment of the trial court is affirmed.