LIBERTY MUTUAL INSURANCE COMPANY, Appellant,

v.

Rufus GRAVES, Jr., Appellee.

No. 1289.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 19, 1978.

Rehearing Denied Nov. 9, 1978.

Dudley B. Foy, Jr., Corpus Christi, for appellant.

David L. Perry, Edwards & Perry, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

In this workmen's compensation case, Rufus Graves, Jr., brought this action against Liberty Mutual Insurance Company for incapacity caused by two separate back injuries. Trial was to a jury which found that each injury was a producing cause of total and permanent incapacity which began on January 4, 1975. The court entered judgment on the verdict allowing Graves to recover total and permanent incapacity benefits for each injury; i. e., two sets of total and permanent benefits beginning on the same day. Liberty Mutual appeals. We affirm.

The facts indicate the following events. On July 16, 1973, appellee, Graves, sustained a back injury while working for Reynolds Metals Company in San Patricio County. Nevertheless, he continued on his job without interruption until January 3, 1975. On that date, he again injured his back and incapacity followed. As a result, on January 28, 1975, Dr. DeNaples, a neurosurgeon, after consulting with Dr. Henry, an orthopedic surgeon, removed two discs (L5–S1 and L4–L5) from Graves' back. Appellee has not worked since that time.

Appellant brings six points of error. In its point 1, the appellant contends that the trial court erred in rendering judgment for two total and permanent incapacities when both incapacities commenced at a single time certain. In short, appellant contends that appellee should be allowed total and permanent recovery for the 1975 injury and no recovery for the 1973 injury.

■ The argument under this point centers around Tex.Laws 1917, ch. 103, § 12c, at 278, hereinafter "§ 12c (1917)", and the wording of its amendment in 1971. Originally § 12c (1917) provided:

"If an employe who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable *because of such injury only for the compensation to which the subsequent injury would have entitled the injured employe had there been no previous injury.*" (Emphasis supplied)

In 1971, the substance of § 12c (1917) was amended by Tex.Laws 1971, ch. 316, § 1, at 1257, hereinafter "§ 12c (1971)", to read as follows:

"If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable *for all compensation provided by this Act,* . . ." (Emphasis supplied.)

In 1977, § 12c (1971) was amended. This amendment readopted the § 12c (1917) language with a few minor changes. See Tex. Rev.Civ.Stat.Ann. art. 8306 § 12c (Supp. 1978). Because the injuries herein occurred in 1973 and 1975, § 12c (1971) controls.

■ Under its point 1, appellant initially contends that § 12c (1971) does not apply to the facts herein. In order to properly decide this question, we must briefly review the decisions interpreting § 12c (1917). *Texas Employers' Ins. Ass'n v. Haunschild,* 527 S.W.2d 270 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.), sets out clearly the history and judicial interpretations of § 12c (1917). See also Sartwelle, Workers' Compensation, 32 Sw.L.J. 291, 305–334 (1978). Because many of the words in § 12c (1917) were used in § 12c (1971), we must presume the words carry the same interpretation the courts theretofore gave to them. *Texas Employers' Ins. Ass'n v. Haunschild,* supra

at 275. Accordingly, when dealing with back injuries, i. e., general injuries, the judicial interpretations of the statute require that they be "compensable" injuries in order for the provisions of § 12c (1971) to apply. See *St. Paul Fire & Marine Insurance Co. v. Murphree*, 357 S.W.2d 744 (Tex. Sup.1962).

■ Appellant argues that § 12c (1971) does not apply because the requirement that there be at least a seven-day incapacity (Tex.Rev.Civ.Stat.Ann. art. 8306 § 6 (1967)) before a general injury is considered "compensable" was not fulfilled in the present case until after the subsequent injury on January 3, 1975 and thus, there was no *prior* compensable general injury. See *Charter Oak Fire Ins. Co. v. Dewett*, 460 S.W.2d 468 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.). In other words, appellant contends that the showing of compensability must be made before the subsequent injury occurs. We do not find this intent in the meaning given to § 12c (1917) or § 12c (1971). The actual language of the Act refers only to a "prior injury." The decision to add "compensable" to modify "prior injury" was explained by the Supreme Court in *St. Paul Fire & Marine Insurance Co. v. Murphree*, supra, as follows:

> "[There must be a] prior general injury . . . for which compensation is provided under the terms of the statute . . ."

No mention was made that the prior general injury had to be determined to be "compensable" prior to the subsequent injury. See also *Texas Employers' Ins. Ass'n v. Haunschild*, supra at 275. Moreover, too often, injuries to areas such as the back lie dormant and are not discovered until a later precipitating event. To hold in accord with appellant's argument would exclude all such cases from the application of this provision.

■ Since the provisions of § 12c (1917) were additionally construed to reduce recoveries for incapacities enhanced by subsequent compensable general injuries, we think that § 12c (1971) also applies to incapacities enhanced by subsequent compensable general injuries. See *Texas Employers' Ins. Ass'n v. Haunschild*, supra at 275; *St. Paul Fire & Marine Insurance Co. v. Murphree*, supra; *Jones v. Pacific Employers Insurance Company*, 416 S.W.2d 580 (Tex. Civ.App.—Eastland 1967, writ ref'd n. r. e.). This determination, of course, is contrary to appellant's assertion that because § 12c (1971) deals with the benefits payable for an incapacity to which a prior compensable general injury has contributed, § 12c (1971), therefore, does not deal with the question of the benefits payable for the incapacity caused by the prior injury. Even so, we hold that the provisions of § 12c (1971) apply to the instant case.

As explained above, § 12c (1971) has been variously interpreted throughout its history. Its initial purpose was to encourage the hiring of handicapped workers. *Gilmore v. Lumbermen's Reciprocal Ass'n*, 292 S.W. 204 (Tex.Comm'n App.1927, judgmt. adopted). Later decisions, however, declared that the purpose of § 12c (1917) was to prevent double recovery. *Traders & General Ins. Co. v. Wyrick*, 118 S.W.2d 923 (Tex. Civ.App.—San Antonio 1938, no writ); *Jones v. Pacific Employers Insurance Company*, supra. In keeping with this purpose to prevent double recovery, the court in *St. Paul Fire & Marine Insurance Co. v. Murphree*, supra, issued a decision which effectively killed the legislative efforts to encourage the employment of disabled workers with prior non-compensable general injuries. This decision exposed employers to liability for handicapped persons' prior non-compensable general injuries. This, of course, made it more difficult for them to obtain employment. Moreover, *Murphree* not only required that prior general injuries be compensable in order to reduce a subsequent recovery, but it also recognized that all injuries would not necessarily be litigated in successive order as had been envisioned by the original § 12c (1917). *Murphree* accordingly expanded the scope of § 12c (1917) to allow reductions in recovery for subsequent general compensable injuries.

In 1971, without explanation, the Legislature modified the language of § 12c (1917) as was shown earlier. It can only be speculated that the change was made to benefit workers whose recoveries would, under § 12c (1917), have been reduced by prior general compensable injuries from which they had actually received no compensation. See 8 Hous.L.Rev. 610, 615 (1971). Be that as it may, the plain purport of the new language was to change the application of § 12c (1917). Where the prior section purported to prevent unjust enrichment, the new section seemed to allow unjust enrichment. *Texas Employers' Ins. Ass'n v. Haunschild,* supra at 276. As one writer put it, the 1971 amendment could be labeled "the workers early retirement program." Sartwelle, Workers' Compensation, supra, at 305. Even though we consider literal application of the provisions of § 12c (1971) somewhat unreasonable, we must still apply its plain terms. As stated in *Texas Employers' Ins. Ass'n v. Haunschild,* supra at 276:

"[A]ny consideration of the consequences of the new Sec. 12c [1971] does not justify a departure from the meaning of the words the Legislature used to express its intent . . . even if it should appear that the statute is impracticable . . . or that it may operate somewhat unequally on contending litigants." (citations omitted).

The rule of § 12c (1971) is that in a general injury case a carrier is not entitled to a reduction for the percentage of incapacity contributed by another compensable general injury. *Texas Employers' Ins. Ass'n v. Haunschild,* supra, at 276. This rule, as applied to the case at bar, prevents the court from reducing the recovery for the July 16, 1973 injury by the percentage of incapacity caused by the January 3, 1975 injury. To look at it another way, the effect of this change as it applies to the present case is clearly illustrated by taking the instant facts and making one minor change; i. e., assume that the plaintiff-appellee brought a separate suit for each injury instead of one suit for both injuries. Given the jury's answers in the present case, the appellee would be entitled to an award of total and permanent incapacity in each separate suit. Viewed from the standpoint of the January 3, 1975, injury, no issues concerning the July 16, 1973, injury would be allowable to decrease the recovery in the suit on the 1975 injury, notwithstanding that the effects of both injuries may have combined to create one incapacity. The result would also be the same in a suit brought on the July 16, 1973, injury. No issues as to the contribution of the 1975 injury would be allowable, and full recovery for the same incapacity would be permitted.

Finally the double recovery allowed in our case can be analogized to the double recovery allowed in *Travelers Insurance Company v. Olivares,* 467 S.W.2d 528 (Tex. Civ.App.—San Antonio 1971, writ ref'd n. r. e.). In *Olivares,* there was a prior and subsequent general injury, as in the case before us. The claimant sued on each injury, but prior to trial he settled the suit on the second injury. The suit for the first injury went to trial and the claimant recovered for total and permanent incapacity for the same period of time that was covered by his earlier settlement of the second injury. In other words, the claimant was receiving double recovery for one incapacity. On appeal, the carrier complained about the double recovery and the court responded that the double recovery would be allowed because the carrier had failed to plead and request issues concerning the application of § 12c (1917) to the second injury in order to reduce the recovery for the prior injury. The double recovery that occurred in *Olivares* as a result of the insurance carrier's neglect is legislatively allowed under § 12c (1971). No issue as to subsequent contribution may be submitted.

In sum, to prevent double recovery in the present case would be to penalize the plaintiff for seeking judicial economy by bringing both actions in the same suit.

Appellant relies particularly on the case of *Aetna Casualty and Surety Company v. Shreve,* 551 S.W.2d 79 (Tex.Civ.App.—

Houston [1st Dist.] 1977, no writ) for the proposition that in the event a general injury aggravates a prior condition, therein disease, that the workman is entitled to recover compensation only for the injury which produces the longest period of incapacity. *Shreve,* however, relied upon Tex.Rev.Civ. Stat.Ann. art. 8306 § 12 (3rd paragraph from the end), which deals only with concurrent injuries. See *United States Fidelity & Guaranty Co. v. London,* 379 S.W.2d 299, 302 (Tex.Sup.1964). In our case, we have non-concurrent injuries and thus Article 8306 § 12 does not apply. Appellant's point 1 is overruled.

Appellant's points 2 and 3 contend there is no evidence and insufficient evidence to support the jury's findings on the following special issues: (17) that the July 16, 1973, injury was a producing cause of any total incapacity of appellee; (18) that such total incapacity began on July 4, 1975; and (19) that such incapacity will be permanent. We disagree. Because the text of appellant's argument is directed totally at the jury's answer to special issue (17), we will restrict our discussion to that contention.

 In determining whether there is "no evidence" to support the jury's finding we must consider only that testimony which supports the jury's findings and disregard all testimony to the contrary. *Guardianship of Henson,* 551 S.W.2d 136 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n. r. e.). In determining whether there is sufficient evidence to support the verdict we must look to the entire record. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Ryan v. Morgan Spear Associates, Inc.,* 546 S.W.2d 678 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.).

The court's charge defined producing cause as "an efficient, exciting or contributing cause which in a natural and continuous sequence produces incapacity. There may be more than one producing cause of an incapacity."

A fair summary of the facts, circumstances and opinions concerning issue (17) follows. Appellee testified that he held several jobs involving heavy manual labor prior to working for Reynolds. He recounted only one minor back injury during these prior jobs and no incapacity or extended pain caused by the single injury. When appellee was hired by Reynolds in 1972, he was subjected to a thorough physical examination, including x-rays, which revealed no abnormalities to his back or legs.

On July 16, 1973, appellee testified that he was working the day shift. He explained that he was extending himself over a large vat of molten aluminum attempting to scrape a wastebasket-sized obstruction off one of the heating elements by using a long solid steel "rake" when he felt a severe pain in his back. He allegedly told his line foreman, Mr. Villarreal, that he had injured himself and then he proceeded to the company's first aid station. But Villarreal's time card showed that he (Villarreal) was on vacation at this time. At first aid, appellee met briefly with nurse Evans whom he told that he had pulled a muscle in his back. Mrs. Evans testified that on the general report sheet she recorded his injury as "sciatica", i. e., pain radiating down the sciatic nerve in the leg, because he came in complaining of pain in the back of his right leg. She further recorded his injury as non-occupational although she later admitted that she wasn't sure whether it was an occupational injury or not. Moreover, she stated that the appellee was in severe pain and that he was "really hurting" when she saw him. Nurse Evans also talked about a "little report card" which was filled out for the appellee at this time and that such report cards were only used in cases involving occupational injuries. After nurse Evans talked with appellee, he met with Dr. Bratt, the company doctor who, after examining appellee, concluded that he had a herniated disc at the L5–S1 level on the left side. It should be noted here that Dr. DeNaples' later surgery report explained that surgery was performed on the L5–S1 level disc on the right side, but that all of the disc was removed. Dr. Bratt recommended rest and sent the appellee back to work that same day. The doctor's report did not mention any injury, but stated that the appellee

had been complaining of leg pains for several days.

Appellee testified that he sustained no further injuries, pain or problems with his back or legs until his second injury on January 3, 1975. In fact, he related that he had only missed three days work in all the time he worked at Reynolds.

Dr. Sharp, a general practitioner and surgeon, testified that he first examined the appellee on January 26, 1976. Appellee explained his back injury on July 16, 1973, and his subsequent pain and injury-free history to the doctor. On this basis and on his conclusions reached from his physical examination and prior experiences, Dr. Sharp stated that because most disc injuries are a result of multiple traumas, appellee's injury on July 16, 1973, did "precipitate and [was] involved in what eventually turned out to be the present [incapacity]." Dr. Sharp further indicated that the back sprain received in July 1973 would naturally affect the disc.

Dr. DeNaples, the surgeon who operated on appellee, testified that radiating pain, i. e., pain which extends from the back down into the legs, involves nerve root irritation which is often caused by a ruptured or damaged disc. He further testified that in his opinion, most of the pain the appellee was experiencing prior to surgery was due to a ruptured disc at the L5–S1 level. Finally, it should be noted that the appellant does not question the jury's finding that appellee was indeed injured while in the scope of his employment on July 16, 1973.

■ We hold that Dr. Sharp's opinions along with the above evidence clearly shows some evidence that the July 16, 1973, injury was a producing cause of the incapacity experience beginning January 4, 1975. See *Lucas v. Hartford Acc. & Indem. Co.,* 552 S.W.2d 796 (Tex.Sup.1977); *Western Casualty and Surety Company v. Gonzales,* 518 S.W.2d 524 (Tex.Sup.1975). While the evidence is somewhat conflicting, we cannot say that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant's points 2 and 3 are overruled.

Appellant's point 4 complains that the trial court erred in refusing appellant a new trial because the court erroneously sustained objection to his jury argument. A portion of counsel's argument appears as follows:

"Mr. Foy: . . . The question is whether he had an on-the-job injury that produced damage or harm to the physical structure of his body.

John Prezas, the bailiff, comes to work with a toothache. The longer he's here, the worse his tooth hurts. He hadn't had an on-the-job injury.

Miss Morrison comes to work with a headache. The longer she sits here and listens to us lawyers, the worse her head hurts.

Mr. Edwards: Your Honor, we object to that as being incorrect because if there's anything that aggravates or accelerates or precipitates further problems of a condition which is related to her job, it's an injury under this Court's charge.

Mr. Foy: Only if it produces damage or harm to the physical structure of his body, and it doesn't.

Judge Blackmon comes to the Court with a back ache, and it hurts. And the longer he sits there, the worse it hurts. But he hadn't had an on-the-job injury.

Mr. Edwards: Now, Your Honor, we object to that because it's going outside the Court's charge. We object to it strenuously. It's a misstatement of the law and there's no evidence to support it and it's just a flatout misstatement of the law.

Mr. Foy: Absolutely proper argument by example, Your Honor.

Mr. Edwards: There's no—

Court: The objection is sustained. The jury will disregard that argument."

The court's charge defined injury as follows:

"By the term "injury" is meant damage or harm to the physical structure of the body, and such diseases or infection as naturally result therefrom, or the incitement, acceleration or aggravation of any disease, infirmity or condition, previously

or subsequently existing, by reason of such damage or harm to the physical structure of the body, or a combination thereof."

See 2 Texas Pattern Jury Charges § 20.01 (1970).

Appellant's jury argument exemplified error by omission. He failed to explain that if any occurrences during work aggravate the hypothetical toothache, headache or backache such that it causes physical damage or harm to the body that this is an injury. See *Gill v. Transamerica Insurance Company*, 417 S.W.2d 720 (Tex.Civ.App.—Dallas 1967, no writ). We agree with the court's decision to exclude Mr. Foy's jury argument. Appellant's point 4 is overruled.

Appellant's points 5 and 6 assert that the trial court erred in permitting Dr. Sharp to testify that the appellee told him during his initial consultation that Dr. DeNaples and Dr. Henry thought the appellee might need future surgery and that he should avoid heavy lifting.

Appellant complains that Dr. Sharp was permitted to testify to the following information given him by the appellee:

". . . All of his doctors have advised him to do no heavy lifting. Dr. DeNaples told him he might need another myelogram and another disc removed.

He last saw Dr. Henry August 25, 1975 and he also told him another back surgery may have to be done and that he should avoid heavy lifting."

We need not consider the merits of this contention in that any possible error was rendered harmless by the introduction of testimony to the same effect at other times during the trial. Rule 434, T.R.C.P.

On page 133 of the statement of facts Dr. Sharp testified that there was a good probability of further surgery and that the appellee should avoid heavy lifting. Further on page 260 of the statement of facts Dr. DeNaples admitted that he had consulted with Dr. Henry concerning future surgery for the appellee. Appellant's points 5 and 6 are overruled. See *Employers Mut. Liability Ins. Co. of Wis. v. Sanderfer*, 382 S.W.2d 144 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.