LIBERTY MUTUAL INSURANCE
COMPANY, Appellant,

v.

Charles W. PEOPLES, Appellee.

No. 16183.

Court of Civil Appeals of Texas,
San Antonio.

Dec. 28, 1979.

Rehearing Denied Jan. 11, 1980.

David B. Person, Brock, Bingham & Person, San Antonio, for appellant.

Phillip D. Hardberger, Hardberger & Herrera, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

In this worker's compensation case the defendant, Liberty Mutual Insurance Company, appeals from a judgment based on jury findings awarding plaintiff, Charles W. Peoples, compensation for total and permanent incapacity resulting from accidental bodily injury sustained by him while acting in the course of his employment for defendant's insured, Jordan Ford, Inc., in San Antonio.

Defendant's first two points challenge the sufficiency of the evidence to support the jury findings of total and permanent incapacity.

Plaintiff was employed by Jordan Ford in August, 1975, and the injury in question occurred on January 6, 1976. Prior to his employment by Jordan, plaintiff had worked for different employers, principally as a truck driver.

The injury in question was to plaintiff's back. Prior to the January, 1976, injury, plaintiff had been involved in several accidents resulting in injury to his back. Some of these injuries resulted in plaintiff's hospitalization, and in 1972 and 1974 surgical procedures described as laminectomy and discetomy were performed.

Defendant's assault on the jury findings is based primarily on the fact that on August 27, 1976, less than 8 months after the injury in question, Dr. Robert Bilderback, the orthopedic surgeon who was treating plaintiff, notified Jordan that plaintiff was able to return to full duty as a car salesman, plaintiff's occupation at the time of the injury. Plaintiff resumed employment for several employers on an intermittent basis as a truck driver until he suffered another injury in May, 1977. The evidence establishes that plaintiff's rate of pay in such post-injury employments was greater than his earnings at Jordan prior to the injury. Several of the persons for whom plaintiff worked after August, 1976, testified that he performed the duties of a truck driver in a satisfactory manner. The evidence further shows that, at least on one occasion, plaintiff made no mention of his back trouble when filling out the application for employment and passed the pre-employment physical required by the employer.

Plaintiff testified that he had not enjoyed a day free from pain since 1972, and he described his inability to perform physical activities without extreme pain. Dr. Bilderback testified that plaintiff's back was weak as a result of the prior injuries and back operations, and that the January, 1976, injury, which he described as a "twisting" fall, aggravated the preexisting condition.

Dr. Bilderback testified that he last saw plaintiff on August 27, 1976, the day on which he cleared plaintiff for work as a car salesman. As of that time, plaintiff was unable to do any work which required lifting, stooping, bending, pulling or climbing. Plaintiff was unable to do those things commonly referred to as "the tasks of a working person" to a degree which would enable him to "hold down a meaningful job." This witness testified that plaintiff would never be normal.

Dr. Bilderback testified that plaintiff kept his appointments until he began having financial difficulties. Plaintiff's home was repossessed on June 23, 1976 and plaintiff was quite concerned about financial matters and anxious to return to work. The doctor cleared plaintiff for full duty as a car salesman because of the belief that plaintiff would be able to sell cars without "active participation in work activity." He did not clear plaintiff for work as a truck driver.

Plaintiff and his wife had been divorced since about 1972, and the four children of that marriage were living with plaintiff. He said he was forced to return to work because he had to make a living for his children, even if he was "hurting." He withheld information concerning his back condition from his post-injury employers because he knew that his application for employment would be rejected if he divulged such information. After Dr. Bilderback decided he could return to work as a car salesman, plaintiff attempted to return to work at Jordan. He spoke to Ben Johnson, manager of the used car lot, but Johnson refused to allow plaintiff to return to work because he did not think that plaintiff was physically able to return to work.

During the 30-month period intervening between the January, 1976, injury and the date of trial, plaintiff had worked a total of approximately 12 months. He has not worked since May, 1977.

■ Plaintiff's testimony concerning his inability to engage in physical activity without experiencing extreme pain is sufficient, particularly when considered in connection with Dr. Bilderback's testimony, to support the finding that plaintiff has been incapacitated to such an extent that he cannot procure and retain employment. *See Texas Employers' Ins. Ass'n v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, 1001 (1944); *Commercial Ins. Co. of Newark, N. J. v. Puente*, 535 S.W.2d 948, 950 (Tex.Civ.App. —Corpus Christi 1976, writ ref'd n. r. e.). The fact that plaintiff returned to work after his injury does not preclude a finding of permanent and total incapacity, particularly where, as here, the jury is justified in believing that his attempt to continue working is the result of hardship and economic necessity. *See International Ins. Co. v. Torres*, 576 S.W.2d 862, 864–5 (Tex.Civ. App.—Amarillo 1978, writ ref'd n. r. e.).

Since it was undisputed that plaintiff had not worked for at least 210 days during the year immediately preceding his injury, the trial court determined average weekly wage in accordance with Section 1(2) of Article 8309, which provides that in such a situation the claimant's average weekly wage "shall consist of three hundred (300) times the average daily wage or salary which an employee of the same class, working at least two hundred ten (210) days of such immediately preceding year, in the same or in a similar employment, in the same or a neighboring place, shall have earned during the days that he actually worked in such year, divided by fifty-two (52)." Tex.Rev.Civ.Stat.Ann. art. 8309, § 1(2) (Vernon 1967).

■ In its point of error no. 4, defendant insists that the trial court erred in submitting issues based on the provisions of Section 1(2), because there was no evidence that plaintiff was working for a daily wage. This ground of objection to the special issues was not presented to the trial court. Defendant objected to the submission of the issues solely on the ground that the only testimony concerning average daily wage of another employee concerned the earnings of an employee not in the same class as plaintiff. This objection does not call the trial court's attention to the defect of which defendant attempts to complain in this Court. Point 4 cannot be considered. 3 R. McDonald, Texas Civil Practice § 12.29.1, p. 408 (rev. 1970).

By its third point defendant seeks reversal because of the exclusion of evidence showing that plaintiff had suffered injuries subsequent to January, 1976, and that such later injuries were the sole cause of plaintiff's present disability. Evidence of such injuries was, in fact, admitted, but defendant's complaint is that it was not permitted to show that an injury suffered by plaintiff in New Mexico in May, 1977, involved damage to plaintiff's back, and was followed by a back operation in January, 1978, on the same area of the back as that involved in plaintiff's prior operations. Defendant was also precluded from showing that, following the May, 1977, injury, plaintiff had told a doctor that he had been "fine" until he injured his back in May, 1977.

In the absence of an apportionment statute, the general rule is that a compensation carrier is liable for the entire disability re-

sulting from a compensable injury without reference to whether the disability resulted from a combination of such compensable accident and a preexisting disability. 2 A. Larsen, Workmen's Compensation § 59 (Desk ed. 1979). This "full responsibility rule" placed handicapped workers at a disadvantage in the employment market since, for example, it required an employer's insurance carrier to bear the full cost of total and permanent disability when a one-eyed worker lost the sight of his remaining eye.

The full responsibility rule was abolished by statute in Texas in 1917. 1917 Tex.Gen. Laws, at 269. Under this apportionment statute, which remained in force until 1971 as Section 12c of Article 8306, it was provided that:

> If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the [compensation carrier] shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury.

1947 Tex.Gen.Laws, ch. 349, § 1, at 690.

In 1927 the Commission of Appeals, after concluding that Section 12c was adopted for the purpose of encouraging employment of physically impaired workers, held that the compensation carrier's liability must, because of the apportionment statute, be reduced by the extent to which a noncompensable previous *specific* injury contributed to the claimant's present disability. *Gilmore v. Lumbermen's reciprocal Ass'n*, 292 S.W. 204 (Tex.Com.App.1927, judgmt. adopted). Later decisions, making a distinction between previous specific injuries and previous general injuries, which were not easily explainable in view of the statutory language, concluded that Section 12c would reduce the carrier's liability in case of a previous general injury only if such previous general injury was "compensable." This strange interpretation of the term "previous injury" apparently was first announced in *Texas Employers' Insurance Association v. Clark*, 23 S.W.2d 405 (Tex.Civ. App.—Eastland 1930, writ dism'd). If we ignore the seemingly unwarranted distinction between the two types of injuries, we are still left with the impossible task of reconciling such holdings with the legislative purpose announced in *Gilmore.* The requirement that a previous general injury be a compensable general injury in order to give the insurer the benefit of the apportionment statute can be justified only if, as said in *Traders & General Insurance Company v. Wyrick*, 118 S.W.2d 923, 924 (Tex. Civ.App.—San Antonio 1938, no writ), the purpose of the statute was to prevent double recovery for the same injury; so that in cases "where the prior injury is not compensable and yet merely contributes to the incapacity following a subsequent injury, the employee will be entitled to full compensation for his ascertained incapacity."

In *Miears v. Industrial Accident Board*, 149 Tex. 270, 232 S.W.2d 671, 672 (1950), the Supreme Court expressed approval of the statement in *Gilmore* concerning legislative purpose. Although the Court noted the "apparent conflict" between *Gilmore* and those cases, including *Clark*, making the statute applicable only if the previous general injury was a compensable injury, it declined to resolve the conflict. This judicial self-restraint was explained by pointing out that *Miears*, like *Gilmore*, involved a previous specific injury and, since *Gilmore* had settled the law applicable to previous specific injuries, it was not necessary to discuss the cases involving previous general injuries. Relying on *Clark* and other decisions by Courts of Civil Appeals, the Supreme Court later held, without mentioning *Gilmore*, that "injury" as used in Section 12c "as related to a general injury, means compensative injury." *St. Paul Fire & Marine Ins. Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744, 749 (1962).

In 1971 the legislature abolished the percentage contribution defense established by Section 12c as originally adopted in 1917. The 1971 amendment of Section 12c deleted the language making the carrier liable "only for the compensation to which the

subsequent injury would have entitled the injured employee had there been no previous injury" and substituted language making the carrier "liable for all compensation provided by this Act." *Compare* 1971 Tex. Gen.Laws, ch. 316, § 1, at 1257 *with* 1947 Tex.Gen.Laws, ch. 349, § 1, at 690. Under the 1971 amendment, which was in force at the time plaintiff in this case was injured,[1] it was unanimously held that proof of a prior compensable injury was inadmissible for the purpose of reducing the worker's recovery, although proof of such prior injury was admissible for the purpose of showing that the prior injury was the *sole* cause of the claimant's present disability. *Mayfield v. Employers Reinsurance Corp.*, 539 S.W. 398, 399 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.); *See generally Texas Employers' Ins. Ass'n v. Creswell*, 511 S.W.2d 68 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e.). It is interesting to note that the notion, adopted in cases stating that the purpose of the pre-1971 statute was to prevent "double recovery," that "injury" when used in a general sense means "compensable injury," was retained[2] although the 1971 amendment permits double recovery. *Liberty Mutual Ins. Co. v. Graves*, 573 S.W.2d 249, 253 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.).

We are aware of no cases discussing the applicability of the 1971 amendment to injuries sustained by the claimant after the injury which gave rise to the litigation.

Prior to the 1971 amendment three cases discussed the effect of such subsequent injuries. In *Southern Underwriters v. Grimes*, 146 S.W.2d 1058, 1061 (Tex.Civ.App.—San Antonio 1940), writ dism'd), the court said that the apportionment rule permitting reduction of compensation awards because of disability produced by previous injuries "plainly refers to injuries occurring before or concurrently with the injury for which compensation is sought and not afterwards." However, when the facts of that case are examined, the actual holding was the rather innocuous one that a noncompensable subsequent injury which caused no disability would not operate to reduce the carrier's liability.

In 1962 the Supreme Court said in *St. Paul Fire & Marine Insurance Co. v. Murphree*, that evidence of the nature and extent of previous and later injuries as admissible because "it is the extent of prior and subsequent injuries that reduces the insurer's liability." 357 S.W.2d at 748. This statement, which is clearly dictum insofar as it relates to later injuries, was uttered without mention of the contrary dictum in *Grimes*.

Finally, in *Pacific Employers Insurance Co. v. Jones*, 416 S.W.2d 580, 582 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.), the *Murphree* dictum became the partial basis for a direct holding that the liability of the insurer was to be reduced by the extent to which a later injury contributed to the claimant's disability. This result rested, at least in part, on the notion that a failure to deduct the disability resulting from the later injury would permit claimant to recover twice for the same injury. The later injury was a compensable injury, and the evidence established that claimant had received compensation for such injury. It can fairly be concluded that we are without guidance as to the admissibility of evidence of the effects of a later injury. It can be persuasively argued that neither the *Murphree* dictum nor the *Jones* holding was based on an interpretation of the meaning of the term "previous injury" in the pre-1971 version of Section 12c. Unless we are willing to adopt an indefensibly strained construction of "previous injury" as including "subsequent injury," it is clear that Section 12c, whether in its 1971–1977 form or its pre-

---

1. The 1971 amendment remained in force until the apportionment rule was reinstated in 1977 by amendment restoring the language of Section 12c to that used in the 1917 statute. *Compare* Tex.Rev.Civ.Stat.Ann. art. 8306, § 12c (Vernon Supp. 1978–79) *with* 1917 Tex.Gen. Laws, at 269.

2. *Texas Employers' Insurance Association v. Haunschild*, 527 S.W.2d 270, 275–6 (Tex.Civ. App.—Amarillo 1975, writ ref'd n. r. e.).

1971 version has no application to later injuries. This conclusion, however, does not solve the problem concerning the admissibility of the effect of later injuries.

Even under the "full responsibility rule" applied in the absence of an apportionment statute, the liability of the insurer was limited to the entire disability *caused* by a compensable injury. Stated differently, if the claimant's disability was caused by the combined effects of the injury in question and other injuries, the carrier was liable for the entire disability to which *both* injuries contributed. The holdings in *Mayfield* and *Creswell*, that evidence of prior injuries is admissible for the purpose of showing that such prior injuries were the sole cause of the present disability, clearly recognize that under the 1971 amendment, which to a great extent reestablished the full responsibility rule, the insurer would not be liable unless the evidence establishes that the injury which gave rise to the litigation produced some disability.

While both *Mayfield* and *Creswell* involved previous injuries, the same rule must be applicable to later injuries. To impose on an insurer liability for permanent and total incapacity produced *solely* by any injury other than that which gave rise to the litigation would be to adopt an indefensibly harsh rule. The application of the full responsibility rule must be limited to cases where the injury in question is itself the producing cause of some disability.

Our conclusion is not inconsistent with the result in *Liberty Mutual Insurance Co. v. Graves, supra*, since in that case the jury found that *each* injury was a producing cause of disability. 573 S.W.2d at 251.

It is not true that evidence of other injuries is inadmissible until the insurer has first established that claimant's present incapacity was caused solely by such other injuries. The court in *Mayfield* said:

Thus, evidence of other injuries would seem to be admissible only if offered for the purpose of establishing those injuries as the sole producing cause of the present incapacity. Appellant's first point, however, turns on the necessity of a *predicate* for such evidence rather than the *purpose* for which such evidence is offered. . . The establishment of any causal relationship between other injuries and present incapacity would be extremely difficult without some reference to or evidence of those injuries.

539 S.W.2d at 399.

In *Mayfield* the court added that while medical testimony concerning causal connection might be necessary when the possibility of such connection is not apparent, such testimony is not required where the causal connection is "manifest." 539 S.W.2d at 401. In this case, given the nature and location of the May, 1977, injury, and the fact that plaintiff never returned to work following such injury, the possibility of a causal connection between that injury and plaintiff's disability must be characterized as "manifest."

We are not called upon, and do not express any opinion concerning the admissibility of evidence of the occurrence of later injuries and their effects, when the insurer does not contend that such later injuries were the sole cause of claimant's disability.

The judgment of the trial court is reversed and the cause is remanded for a new trial.